248 So.2d 777 (1971)
COMMERCIAL UNION INSURANCE COMPANY et al.
v.
Charles P. BYRNE, II and Charla M. Byrne.
No. 46243.
Supreme Court of Mississippi.
May 31, 1971.
*778 Watkins & Eager, Elizabeth Hulen, Hassell H. Whitworth, Jackson, for appellants.
Estes & Blackwell, Gulfport, for appellees.

ON DIRECT APPEAL
INZER, Justice:
This is an appeal by Commercial Union Insurance Company (Commercial Union) from a judgment of the Circuit Court of Harrison County, Mississippi, in favor of its insureds, Charles P. Byrne, II and his wife, for damages to the Byrne home and its contents sustained during Hurricane Camille in 1969.
Commercial Union issued to Byrne an insurance policy insuring against all risks, except those excluded to the Byrne dwelling to the extent of $32,000 and $12,000 on the contents. The policy exclusions as to the coverage on the dwelling provided that:
THIS COVERAGE GROUP DOES NOT INSURE AGAINST LOSS * *
Caused by, resulting from, contributed to or aggravated by any of the following:
(1) Flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not * * *
With reference to the interior of the dwelling and the contents thereof, the policy provides as follows:
2. Windstorm and Hail: This Company shall not be liable as respects this peril for loss caused directly or indirectly by (a) frost or cold weather, or (b) ice (other than hail), or (c) snow, or (d) sleet, all, whether driven by wind or not; for loss to the interior of the building(s) or the property covered therein, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building(s) covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct action of wind or hail and then shall be liable for loss to the interior of the building(s) or the property covered therein as may be caused by rain, snow, sand or dust entering the building(s) through openings in the roof or walls made by direct action of wind or hail.
The Byrne home is located north of Pass Road and is a considerable distance from the coast line in Gulfport, Mississippi. *779 The house was built in 1966 and is a substantial, well-constructed dwelling. The outside walls are of brick veneer. The house contains a garage and utility room, dining room, den, kitchen, breakfast room, four bedrooms, back screened porch and paved patio. Interior walls are panelled with plywood and the dining room was papered with expensive wallpaper.
Hurricane Camille struck the Gulf Coast on August 17, 1969. The Byrnes closed all doors and windows except one for ventilation in the kitchen and left home about 2:30 p.m. on that date. They returned on the afternoon of August 19.
Byrne sued for $19,420.07 damages to the dwelling and contents. He alleged that the dwelling was damaged to the extent of $7,772.28, and the contents to the extent of $11,549.73, and $148.06 was paid out in additional living expenses, covered by the policy. The jury returned a verdict for Byrne in the sum of $6,281.62.
Hurricane Camille did extensive damage to the coastal area generally. Its winds reached one hundred fifty miles an hour and in the area of the Byrne home five to seven inches of rain fell in a relatively short time. The waters in a nearby bayou rose between fourteen and sixteen feet above normal high tide and water rose in the Byrne home. The evidence showed, however, that the highest tide rose after the maximum winds did its damage. The Byrne home was surrounded by trees; twenty-three were broken or blown down; two were blown across the house. Damage to the trees was not covered by the policy. The garage door was opened by the wind. The wall between the dining room and the garage had been moved inward; the wall between the inside and outside utility room had been moved inward; the ceiling of the garage was water stained; the carpeting was wet; the inside of the house was stained; and the front door sustained damage. Windows were cracked but not blown out. All outside screens were damaged. The roof supports were broken where trees had struck the roof. Branches of trees had been blown through the roof and through the plywood roof decking. Inside the house some of the furniture had been overturned. Two lamps fell from tables and were broken. The lawn furniture was destroyed. The basement windows were loosened so as to admit rainwater. W.G. Derise, an experienced contractor, estimated the cost of necessary repairs to the dwelling at $6,178.75, although this estimate included several items for which it appears that Commercial Union is not liable, such as a $950 item for an air conditioner compressor. It did not include the amount expended as the cost of a new roof, amounting to $990, but did include $275 estimated repair to the roof. It was stipulated that with the exception of the estimated cost of repair to the roof, Mr. Derise's estimate of the value of the damages to the Byrne dwelling was reasonable, but it was not agreed that the damages were covered by the policy.
It was also stipulated that the contents of the dwelling were damaged to an extent greater than $12,000 (the limit of coverage) but Commercial Union did not admit that any part of the damage to the contents was covered by the policy. The stipulation contained a three page list of the damaged items, although the individual items are not separately valued.
Both the damage to the dwelling and damage to the contents were subject to $50 deductible.
Commercial Union requested and the trial court refused an instruction peremptorily directing the jury that Byrne could not recover anything for damages to the household contents. This action is assigned as error. Since this question involves whether the trial court erred in refusing a peremptory instruction this Court must apply the rule recently stated in a number of cases, including, Dehmer v. Hederman, 252 Miss. 839, 173 So.2d 924 (1965), where it was said:
It is uniformly held that in determining whether a peremptory instruction should *780 be given the court must look solely to the testimony on behalf of the party against whom the peremptory instruction is requested, and must take that testimony as true along with all reasonable inferences which could be drawn therefrom. And even when the evidence is such that a judgment for the adverse party would have to be set aside as being contrary to the overwhelming weight of the evidence, it does not follow that a directed verdict should be granted. See Meaut v. Langlinais, 240 Miss. 242, 126 So.2d 866 (1961). Therefore, we view the evidence in this case in the light most favorable to Dehmer and look to it solely, together with all inferences that may be drawn therefrom. The facts are stated in accord with this rule. (173 So.2d at 925).
We must, therefore, determine whether the evidence and the reasonable inferences to be drawn therefrom show that the action of the wind and rain that entered the building through openings in the roof or walls made by direct action of the wind damaged the contents of the dwelling to the extent of more than the $50 deductible. In short, if more than a scintilla of evidence shows more than $50 damages to personal property within the coverage of the policy the trial court correctly overruled the peremptory instruction involved in this assignment of error.
Commercial Union relies on Camden Fire Ins. Asso. v. New Buena Vista Hotel Co., 199 Miss. 585, 24 So.2d 848 (1945). The Camden Fire case contains some statements and quotations from other authorities that are pertinent to the present inquiry. However, that case is clearly distinguishable on the facts. The insured building was being repaired and a substantial part of the roof had been removed. When the workmen saw the storm approaching, they hastily tried to cover the portion of the building from which the roof had been removed, but were unable to successfully do so in order to efficiently prevent the water doing the damage. There was no question of fact in that case comparable to the one before the Court.
Another case relied upon by Commercial Union is Fire Insurance Exchange v. Paulson, 381 S.W.2d 199 (Tex.Civ.App. 1964). That case was not resolved on a peremptory instruction. The Court reversed and remanded the judgment against the insurance company on a finding that the verdict of the jury that the insured's house did not sustain loss caused by high water was against the weight and preponderance of the evidence, and the case was remanded for a new trial. As indicated in the statement of the question we are not concerned here with the weight of the evidence but the refusal of the trial court to grant a peremptory instruction.
An extended annotation on the various aspects of the causes of loss under windstorm insurance policies appears in 93 A.L.R.2d 147 (1964). Examination of this annotation indicates that there are several categories of cases involving the cause of loss within the meaning of windstorm insurance. Most of the cases involve extended coverage and Byrne points out that the policy issued by Commercial Union is an all peril policy with certain exclusions. However, it seems that the provisions of the policies with reference to the problem at hand is substantially the same, whether the policy provides extended coverage or is an all peril policy. The categories of cases are (1) those holding that if a windstorm is the dominant and efficient cause of loss the insured may recover notwithstanding that another cause or causes contributed to the damage suffered; (2) cases holding that if a windstorm combines with a hazard expressly excluded from the policy coverage to produce the loss the insured may not recover. This rule is based upon the reasoning that the insurer cannot be held liable for any part of the damage caused by the excluded hazard, and where the damage attributable to windstorm and the damage attributable to the excepted peril cannot be separated and the amount of the loss due to each ascertained and apportioned, *781 the total loss resulting from the combined action of the two falls outside the policy coverage; (3) cases holding that the insured may recover notwithstanding the loss was brought about by the combined action of a windstorm and an excluded hazard if the part of the damage attributable to the windstorm can be separated from the part of the loss due to the action of the excluded peril; (4) it has been held in some cases that where the question presented was whether the loss was due to windstorm or to water, the entire question of proximate cause was treated as one of fact independent of the explicit application of any rule of law. The case of New Hampshire Fire Insurance Co. v. Kochton Plywood and Veneer Co., 242 Miss. 169, 134 So.2d 735 (1961), is cited as supporting the last category of cases.
There was evidence in this case that branches were driven through the roof, one tree made an opening in the roof, and that there was some leaking as a result of the openings made by the wind. Some of the furniture on the inside of the house was turned over and at least two lamps were broken and other items were damaged by water. When Byrne returned to his home after the storm the garage door was open, the window from the carport to the kitchen had been left open for ventilation, and the evidence shows that the aluminum windows had been loosened by the action of the wind and the front door had been damaged. The jury was justified in finding that there was some damage to the interior of the house from wind action. The jury was also justified in finding that prior to the water in the nearby bayou rising and getting into the house substantial quantities of water had entered the house through the openings made by the wind from the roof and from the windows and the front door. The enormous force of the wind driving against the large windows which had been loosened was calculated to admit substantial quantities of water and the jury could infer, not only that the carpets were damaged, but that other contents of the house on the floor were also substantially damaged before any water rose in the house.
We conclude that, while the case is admittedly a very close one, we cannot say that there was not enough evidence to withstand the requested peremptory instruction measured by the applicable rules of law stated above.
The appellant next contends that under the proof the maximum recovery of appellees for damage to the building was $2,948.96 and a verdict in excess thereof cannot be affirmed. The appellant does not request that the case be remanded on the issue of damages, but that it should be reversed and judgment entered here for the appellant in the reduced amount of $2,948.96. It is contended on the part of Commercial Union that the only proof of damages consisted of the amount paid Derise for cleaning and painting the outside walls, repairing the screens, front door, windows and the hole in the dining room wall, $1,860.90; complete new roof, $990; extra living expenses, $148.06; for a total of $2,998.96, less $50 deductible, for a total of $2,948.96. Of course, this does not include the items of $1,785 for carpets and $218.75 for the damage to the vinyl floors. Admittedly, most of the damage to the contents of the house was not caused by peril covered by the policy, but we are of the opinion that the evidence justified the jury in finding that the damages exceeded $2,946.96. Therefore, this assignment of error fails.
The final assignment of error is that the instructions granted at the request of Byrne were vague and abstract and confusing to the jury and did not adequately state the issues and furnished the jury no basis for assessment of damages. Commercial Union contends that the basic error in the instructions is that Byrne's requested instructions included both the contents and the dwelling itself and that there were two distinct different types of coverage. We are of the opinion that Commercial Union is in error in contending that there *782 were two basic types of coverage to the contents and to the dwelling. Coverage group A included fire and allied perils as set forth in the forms and endorsements and the property covered included the dwelling, which was insured for $32,000, and the contents, which were insured for $12,000. Limitations as to the loss to the interior of the building and to the contents is contained in the same clause in the policy which was quoted in the earlier part of this opinion.
It is also contended that the instruction granted at the request of Byrne placing the burden of proof on Commercial Union to damage by flood waters was erroneous. Commercial Union cites the case of Roberts v. Interstate Life & Accident Insurance Co., 232 Miss. 134, 98 So.2d 632 (1957), as authority for the proposition that the burden of proof in this regard was on Byrne. The Roberts case merely held that the beneficiary, plaintiff, had the burden of proving the allegation in the declaration that the death of the insured was inflicted by a person while committing the crimes of burglary or robbery which was the peril insured against. In the case now before the Court, Commercial Union pleaded as an affirmative defense that the damage to the Byrne property resulted from or was contributed to or aggravated by flood, surface water, or waves or tidal water, etc. Generally, the burden of proving an affirmative defense to an action on an insurance policy is upon the insurer. 44 Am.Jur.2d Insurance § 1952 (1969).
Reading all of the instructions together we cannot say that the jury was not fairly instructed on the issues involved in this case.
Recognizing, as we do, that this is a close case, we are of the opinion that upon the issues presented for our determination the case should be, and is affirmed on direct appeal.

ON CROSS APPEAL
Appellees on cross appeal assign as error the failure of the trial court to include in the judgment interest on the amount of the judgment from the date of the loss or from the date of the proof of loss. Appellees admit that ordinarily appellant had sixty days from the filing of the proof of loss to make a payment, but contend that appellant rejected the claim within the sixty days and therefore it waived the sixty day period. Appellees argue that in their action on an insurance contract they should be permitted to recover damages for a breach of the contract in the form of interest. Appellees point out that interest on such claims has been allowed in this state.
Appellant points out that appellees brought suit for $19,420.07, claiming that all such damage was a direct result of wind. Appellant acknowledged that appellees had suffered some wind damage and deposited into court $985.45 which they claimed to be the amount due appellees under the insurance contract. Thus, appellants argue that the demand for damages was unliquidated and appellees were not entitled to any interest until their claim was liquidated.
None of the decisions of this Court cited by counsel are directly in point on this issue. We held in Yorkshire Ins. Co., Ltd. v. Brewer, 175 Miss. 538, 166 So. 361 (1936), that under our valued policy statute (Section 5693, Mississippi Code 1942 Annotated (1956)) an insurance company in the case of a total loss is not permitted to show that the property was not of the value stated in the policy and where the insurer refused payment and the jury found there was a total loss, interest accrued from the date of the loss.
In Aetna Ins. Co. v. Natchez Hotel Co., 160 Miss. 818, 134 So. 582 (1931), the insurance company withheld payment of the adjusted loss under an insurance policy because of the intervention of a third party who claimed the money. After suit was filed the insurance company paid the money admitted due into court. This Court held that the insurance company was liable for interest from the date of the adjustment until the date the money was paid into court.
*783 Fireman's Fund Ins. Co. v. Haley, 129 Miss. 525, 92 So. 635 (1922) involved a suit by the insured on an automobile liability policy. Haley was involved in an accident and suit was brought against him. The attorney for the insurance company assisted in the defense of the claim. A judgment was recovered against Haley for $1,000. The insurance company refused payment and Haley brought suit to recover against his insurer. The trial court awarded judgment for $1,000 plus interest from the date of the collision. On appeal to this Court, the insurance company did not contend that it was not liable for interest, but contended under the terms of the policy that it had sixty days within which to pay the loss. This Court agreed and held that the insurance company was not liable for interest until the expiration of the sixty day period.
The foregoing cases are not in point here, but it seems to be clear from what was said in these cases and other cases that where there is a total loss and the valued policy statute comes into play, the insured is entitled to interest from the time the payment is due, provided a proper demand for interest is made. It is also clear where the loss payable under fire or windstorm policy is liquidated or is capable of being made certain by a mere calculation the insurer is liable for interest if properly demanded from the date payment is due under the terms of the policy.
However, where as here the loss is not total and the amount of the loss is in sharp dispute, it presents a much more difficult question. An examination of the authorities from other states reveal that some courts hold that interest cannot be recovered upon a fire or windstorm insurance policy so long as the demand of the insured is not liquidated. Other courts hold that interest is recoverable by the insured notwithstanding that the claim is unliquidated in the sense that the amount of the loss is in dispute and evidence is necessary to establish it. Some other courts seem to take a position in between these two views and the allowance of interest seems to depend upon the facts involved in each particular case.
We are of the opinion that where as in this case there is a justifiable dispute as to the amount of the loss, the insured is not entitled to interest until the amount of the claim has been made certain or liquidated. However, we can envision cases where, in the discretion of the trial court interest should be allowed although the amount of the loss is in dispute and for this reason we do not foreclose the allowance of interest in every case where the claim is unliquidated.
In this case, the trial court was correct in allowing interest from the date of the judgment and refusing to allow interest prior to that time. For this reason, this case is affirmed on cross appeal.
Affirmed on direct and cross appeal.
GILLESPIE, P.J., and PATTERSON, ROBERTSON and HARPER, JJ., concur.