257 So.2d 217 (1972)
Lloyd K. GRACE and Willis T. Guild, Jr.
v.
LITITZ MUTUAL INSURANCE COMPANY.
No. 46483.
Supreme Court of Mississippi.
January 17, 1972.
*219 Estes & Blackwell, Gulfport, for appellants.
Bryant & Stennis, Gulfport, Bacon & Smith, Jackson, for appellee.
*218 BRADY, Justice:
This case arose out of the damage wrought by Hurricane Camille to an office building owned by Lloyd K. Grace and Willis T. Guild, the appellants, who were architects and partners. The appellee, Lititz Mutual Insurance Company, insured appellants' property in the amount of $10,000 on the office building and $2,500 on the contents thereof. The appellants gave due notice and filed proof of loss with appellee. After receiving notice of refusal to pay the coverage, the appellants filed suit in the Circuit Court of Harrison County. This case has been tried twice, the first having resulted in a mistrial for the reason that the jury could not agree upon a verdict. The second trial resulted in a judgment in the sum of $12,500 for the full amount of coverage on the office building and its contents. The trial judge overruled the appellants' motion to have the verdict corrected as to interest and denied appellee's motion for a judgment non obstante veredicto and, in the alternative, for a new trial. The trial judge, however, granted appellee's motion for a new trial on damages alone unless within thirty days appellants entered a remittitur in the amount of $2,500. Appellants, refusing to enter the remittitur, appeal this judgment and appellee cross-appeals.
This is the third case[1] before this Court dealing with the question of whether the destruction of a building was caused by the wind forces of Hurricane Camille or whether tidal water contributed to or aggravated the loss. In each of these cases, liability was denied under the following exclusion provision of the policy:
"This Coverage Group does not insure against loss:
(b) Caused by, resulting from, contributed to, or aggravated by any of the following:
(1) flood, surface water, waves, tidal water, or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;"
The office building in question was a seventy-five year old white frame house which appellants had converted from a family residence into an office building. The building consisted of six offices, a reception room, two baths and a kitchen area and was located on West Beach between Gulfport and Biloxi, situated immediately east of the Sahara Motel. It was stipulated between counsel representing the litigants that the policy was in full force and effect and that the value of the building was at least $10,000 and the contents thereof at least $2,500 at the time of the loss. The record discloses that the building, and likewise the contents thereof, were completely destroyed by Hurricane Camille.
The record further discloses these significant facts which are urged by appellants *220 to refute the contention of appellee that the office was destroyed by water and not by wind. The spot on which the building was located was 14.7 feet above sea level and the highest static water mark at this locale to which the water rose was 20.4 feet above sea level. If the building was still standing at the time the water rose to its highest static level, there could only have been 1.7 to 2.7 feet of water above the floor. Appellants assert that there was no water damage done to the ceiling of the Sahara Motel which was situated at an elevation of 22.5 feet and the top of the roof thereof was 24.8 feet above sea level. A section of the ceiling from appellants' office building was found on the top of the roof of the Sahara Motel, which appellants urge is proof that only as a result of wind force could the ceiling of their office have been deposited thereon. One or more witnesses for the appellants testified that the construction of the building made it impossible for the building to withstand hurricane winds with higher velocity than seventy-five miles per hour or more. However, the record shows that this building did withstand other hurricanes including Hurricane Betsy, which had winds of 100 miles an hour and in excess thereof.
The record supports appellants' contention that the design of the office building made it less resistant to wind than other buildings in the area for the reason that the building was constructed three to four feet off the ground on piers, thus exposing the floor and the bottom thereof to wind forces, which was not true of the Sahara Motel situated next door. The relation of the height of the office building to its width also exposed more surface to the wind force than would have been exposed by a lower building. Moreover, appellants point out that the overhanging roof on the porch area was a factor which augmented the uplift and upward force from below which was exerted on the office building by the action of the wind. The front wall of the office building had large windows which slid up and down into cavities when opened that constituted weaknesses in the front of the building. Also, there was the complete absence of diagonal bracing or trussing to the roof rafters and the ridge lines were only supported basically by vertical studs or braces. Moreover, there was only a single floor so that the diagonal bracing effect of a second floor was lacking.
Witness F.C.C. Brash, who testified in behalf of the appellants, lived in his home on 16th Street, immediately north of the Grace and Guild property. He testified that his house was approximately twenty-four inches above the ground at the front and approximately thirty inches above the ground at the rear. He testified that on the night of the hurricane, the winds were very high and that he could hear more than he could see, although he had a flashlight and could see ripping limbs. He first noticed the arrival of water around midnight when he felt water on the floor; he looked out the windows and opened the back door, the north door, and saw that the water was about level with his floor. After the water had begun to recede between 12:30 and 1:00 o'clock, he waded out in water above his knees and tied up his boat. Mr. Brash also testified that his house was protected by trees and other houses, thereby making the winds sweep upward and scoop over his house. He testified that in addition to his house suffering actual water damage, shutters had been blown off the east and west sides of his house, and his TV antenna was blown down as well as two trees. However, not a single window was broken in his house nor was there a single shingle lost off his house.
Mr. Charles Roy Strange, also testifying in behalf of appellants, stated that on the night of the storm he was in his house two doors east of the Grace and Guild office building. There was testimony to the effect that the Strange house was far more substantially constructed than the office building of Grace and Guild. Mr. Strange testified emphatically that the house in which he was situated "exploded" and was *221 completely destroyed by wind prior to the onslaught of any flood waters. Mr. Strange testified that he went out through the air and that he hit the top of the garage and glanced to the right and landed in the top of a tree that was already blown down. He testified further that he got a flashlight out of his back pocket and looked back at where the house had been because he was afraid it was going to come after him, but the house was already gone. Mr. Strange testified that he had great difficulty in turning into the wind because it was so strong; that the wind blistered the side of his face. He was not able to give any estimate of what time it was when he first noticed the water rising around the tires of his truck when he had gone out the back door earlier. However, he testified that the water did not rise suddenly, but that it was just a gradual rise and there was very little wave action. This was subsequent to the time that his house had exploded.
In substance, the foregoing constitutes the proof which was offered by the appellants. The appellee and cross-appellant, however, seriously controverts this proof, as shown in the following testimony which it urges proves that the tidal waters contributed to or aggravated the loss of the appellants' office.
Henry E. Griset, a professional engineer, testified on behalf of the appellee that the wind velocity from the storm stayed approximately the same for miles to the north of the coastline; that it was still recorded at hurricane speed in Jackson, Mississippi. Appellee contends that, therefore, there would be no difference in the velocity of the wind at the property on 16th Street and the Grace and Guild property. From his inspection of the property, Griset determined that there was a distinctive pattern of damage, and he compared the destructive forces of wind and water and testified that water is much more destructive. When shown photographs taken after the hurricane of the area surrounding the Grace and Guild property that were admitted as exhibits in this case, Griset testified that the wind velocity was the same throughout the areas covered. Griset further testified that wind forces could not have destroyed the Grace and Guild building without causing greater damage to the Rauschkolb house just north of it, and it was Griset's opinion that water forces caused the destruction of the appellants' building.
The pattern of damage along the flooded coastline was ten to fifteen times more severe than the pattern of damage just slightly inland in the unflooded areas. Also, the house of F.C.C. Brash, who lived immediately back of the appellants' property, suffered little or no damage. Defendant attributes this to the depth of the water. Another house on 16th Street, just one block north of the appellants' property, had been moved off its foundation some sixty-three feet, butted on the inside with water marks therein, but there was very little roof damage to the house.
The scuff marks on the trees just east of the Sahara Motel, where debris in the tidal waters had rubbed the bark off, showed that the water rose to a height of seven to ten feet above the ground. This would mean that the water was over the eight foot eaves of the Sahara Motel. Appellee also presented testimony that the ceiling of the Sahara Motel was "punched upward" by floating debris and sea water. Since the ground level from appellants' building to the Sahara Motel on the west was approximately the same, this would mean that the water level reached equal heights on the appellants' property. This is supported by the fact that the big oak trees just in front of where appellants' building had stood also had scuff marks on them from the hurricane which were ten feet above the level of the ground. Defendant contends that this would account for the ceiling from the appellants' office building being on top of the Sahara Motel roof.
Appellee attacks the credibility of the testimony of Charles Roy Strange by introducing *222 the testimony of Hugh Hinson. Mr. Hinson testified that in a conversation between him and Mr. Strange on the afternoon following the storm in explaining Mr. Strange's experiences during the storm, Strange failed to mention any loud explosions, or that he had been blown out of his house and through the air, or that he was knocked on the garage. Appellee submits that Strange's testimony as to the absence of water in his house at the time it exploded is contradicted by Strange's own testimony concerning the water in and around his house immediately after the explosion. Appellee also presented testimony showing that the tree to which Strange clung during the storm was only one foot lower than the front of the property where Strange's house had been; thus, appellee contends, Strange's testimony as to the tree being situated in a ditch is misleading.
Appellee further points out that appellants' property had weathered severe hurricanes for approximately seventy-five years. Hurricane Betsy in 1965 had winds of over one hundred miles per hour and the hurricane in 1947 had winds of one hundred and twenty miles with gusts up to one hundred and fifty-five miles per hour. However, the winds of Hurricane Camille had only one gust to reach one hundred and twenty-nine miles per hour, and this was at Keesler at 10:55 p.m. The highest sustained winds at Keesler Air Force Base, situated approximately eight miles from the property of appellants, were eighty and six-tenths miles per hour, and the strongest winds did not switch around toward the south until 1:00 a.m., after most of the destruction and water had passed.
Appellee contends that the most significant testimony in the entire case is that of Lloyd Rauschkolb. On the night of Hurricane Camille, Lloyd Rauschkolb and his wife, and their children, spent the night in their house on 16th Street, the next street immediately north of appellants' property, so that the back yards of the appellants and the Rauschkolbs were adjacent. The houses were approximately one hundred and fifty feet apart and there were windows all across the back of the Rauschkolb house facing the appellants' property. Mr. Rauschkolb testified that all the windows in the back of the house were cracked open and that around 10:00 p.m. water began lapping over the windows and coming in constantly like a water faucet. He could see through the back of the house because it was "all glass in the back" and he could see the appellants' building  "I could see the buildings ... they were there." He further testified that when he went out into 16th Street the water was up to his armpits and the two automobiles of the Rauschkolbs were floating around in front of the house. Mrs. Rauschkolb testified that the water was up to her neck and she was five feet, five inches tall. Mrs. Rauschkolb further testified that the water was a lot deeper outside the house than it was inside. Both Mr. and Mrs. Rauschkolb testified that at the time they left their house and went out onto 16th Street, there were no windows broken or doors blown open in their house. They also testified that when they returned the next day they found the damage was confined to the lower part of their house and the interior was covered with mud; and that there was very little, if any, roof damage.
There is no proof of a huge destructive tidal wave. There is abundant proof of high water which arose gradually and quickly to a height of ten feet in the area where appellants' office was situated. This water extended in various depths to the L and N Railroad track and later receded.
We will now consider those errors assigned on the direct and cross-appeal which merit consideration in order to dispose of this cause. Three assignments of error are urged by the appellants, Lloyd K. Grace and Willis T. Guild, Jr., hereinafter designated as appellants or Grace and Guild. These assignments of error are as follows:
1. The Lower Court erred in entering an Order on October 16, 1970, granting *223 the defendant a new trial on the issue of damages alone unless the Plaintiffs should enter a $2,500.00 remittitur on their judgment rendered in the Lower Court in the amount of $12,500.00.
2. The Order of the Lower Court granting a new trial on the issue of damages alone was against the overwhelming weight of the evidence and the law applicable thereto.
3. The Lower Court erred in refusing to allow the interest on the Plaintiffs' claim from the date of the loss or in the alternative from the date of the proof of loss or the time in which the claim became legally due.
The appellee and cross-appellant urges the following errors:
1. That the trial court erred in not granting appellee and cross-appellant's request for a directed verdict, in not granting a judgment notwithstanding the verdict and in not granting a new trial.
2. That the trial court erred in allowing testimony regarding windstorm damage at the Navy Sea Bee Base which was located one mile north and approximately five miles distant from the property of the appellants.
3. That the court erred in permitting the verdict of the jury to stand because the verdict disregarded the uncontradicted and credible evidence of Mr. and Mrs. Rauschkolb who testified in behalf of the appellee and cross-appellant in violation of established rules of law.
4. That the verdict for the appellants could only have been rendered by conjecture, guesswork, surmise and speculation on the part of the jury and the verdict of the jury is contrary to the physical facts and against the overwhelming weight of the evidence.
5. That the damages awarded by the jury were not supported by the evidence or law and so excessive as to evince bias, passion and prejudice on the part of the jury.
We will consider the errors assigned by the litigants, not in the order in which they were presented but as we feel will permit a reduction in the size of this opinion.

I.
The second assignment of error urged by appellee and cross-appellant is that the trial court erred in allowing Henry E. Griset to testify on cross-examination concerning the windstorm damage at the Navy Sea Bee Base which was located one mile north of the beach and approximately five miles west of the property of appellants. We point out that on direct examination by counsel representing the appellee and cross-appellant this witness testified there was no appreciable difference in the velocity of the winds just off the coast as compared with those right on the coastline; that in Jackson, Mississippi, they were still recorded at hurricane speed; that there was no difference in the wind velocity on 16th Street and where the Grace and Guild property was situated. Appellee's witness Mr. Kneasel also testified as to the pattern of damage of Hurricane Camille.
We are of the opinion that the court did not err in allowing, over appellee's objection, the testimony of Mr. Griset regarding the windstorm damage at the Navy Sea Bee Base. The appellee opened this door with reference to the constancy of the velocity of the wind not only as to beachfront property, including the office building of Grace and Guild, but for miles north thereof completely removed from any water damage. If this could possibly be considered an error for the reason that a proper predicate was not made, it certainly was not a reversible error.

*224 II.
The gravamen of appellee's third assignment of error is that the lower court erred in permitting the verdict of the jury to stand because of the uncontradicted and credible evidence of Mr. and Mrs. Rauschkolb which was in violation of the established rules of law. The record reflects that there were no eye witnesses who actually saw the office building at the time it was destroyed. The Rauschkolbs testified that between 9:00 and 10:00 o'clock p.m. they saw the office of appellants standing and that at that time the water was lapping over the windows on the south side of the Rauschkolb home. This was immediately before they left their home going out a window on the front porch and into the yard where the water was up to Mr. Rauschkolb's armpits. None of the witnesses for the appellant testified as to when appellants' office was destroyed or directly what destroyed said office. However, witnesses F.C.C. Brash and Captain James T. Holland testified that the rise and tidal surge of water did not occur until between 12:00 and 1:00 o'clock in the morning. Mr. Strange testified that his house, which was one hundred and fifty feet from appellants' office building, exploded and he was blown in the air. Mr. Strange testified there was no water in his house at the time his house exploded but that the water was up to the wheels of his truck outside. Mr. Strange also testified as to the poor visibility during the storm and that he had to use a flashlight and lamps with batteries in order to see.
We feel that the testimony of the Rauschkolbs was sufficiently contradicted by physical facts, differences in time and by other testimony to create proper issues of fact for consideration by the jury.

III.
We will consider jointly appellants' first and second assignments of error relating to the court's requiring a remittitur of $2,500 to be accepted by the appellants or a new trial granted on the issue of damages together with the first, fourth and fifth assignments of error urged by appellee and cross-appellant. These assignments of error can be consolidated into two questions: First, was the verdict of the jury against the overwhelming weight of the evidence? Second, was the trial court correct in ordering a new trial on the issue of damages alone unless the appellants entered a $2,500 remittitur on their judgment in the amount of $12,500?
We have discussed in great detail the evidence urged by the parties in support of their contentions as to whether the Grace and Guild office building and the contents thereof were destroyed by wind. The rule is well established in this state that where the question presented to the jury was whether the loss was due to windstorm or to water, the entire question of proximate cause is treated as one of fact independent of the explicit application of any rule of law. Commercial Union Ins. Co. v. Byrne, 248 So.2d 777 (Miss. 1971); New Hampshire Fire Ins. Co. v. Kochton Plywood & Veneer Co., 242 Miss. 169, 134 So.2d 735 (1961). It is sufficient to show that wind was he proximate or efficient cause of the loss or damage notwithstanding other factors contributed to the loss. Lititz Mut. Ins. Co. v. Boatner, 254 So.2d 765 (Miss. 1971); Kemp v. American Universal Ins. Co., 391 F.2d 533 (C.A.5 1968). The material facts in the record are in severe dispute and therefore the jury had ample testimony to sustain the appellants' contention that their office building was destroyed by wind before the tidal waters reached the property. Cf. Firemen's Ins. Co. of Newark, N.J. v. Schulte, 200 So.2d 440 (Miss. 1967).
This Court is of the decided opinion that there was insufficient evidence to justify the trial court's order of a new trial on the issue of damages alone in the event the appellants did not enter a remittitur of $2,500. The proof established conclusively that there was a complete loss of *225 the Grace and Guild office building and the contents thereof. It was stipulated that at the time of the loss the building was worth at least $10,000 and the contents at least $2,500. Nowhere during the trial of the case did the appellee ever contest the amount of the loss or the fact that all of the property owned by the appellants was totally destroyed, nor did the appellee offer any evidence at any time during the trial of what value or of what part the appellants' property was destroyed by water prior to its destruction by wind. Appellee and cross-appellant, however, did vigorously deny any liability on its part for any loss under the contract.

IV.
Insofar as the third assignment of appellants is concerned, namely, that they were entitled to interest on their claim, we hold that there is no merit therein because in this instance there is a bona fide dispute as to the amount of damages as well as the responsibility for the liability therefor. Lititz Mut. Ins. Co. v. Boatner, supra, and Commercial Union Ins. Co. v. Byrne, supra, are controlling on this issue. The exception set forth in Byrne and Boatner dealing with the denial of a claim on an impermissible ground, does not apply here for the reason that this is a bona fide disputed claim which the jury was unable to resolve in a former trial of this case. Therefore, the trial court was correct in denying the contention of the appellants that they were entitled to interest from the date of the loss or in the alternative from the date of proof of the loss or the time at which the claim became due, or from the date that payment is demanded under the terms of the policy. In Byrne, which case is cited by appellants as authority for the allowance of interest, and also in Boatner, we distinctly held that interest runs from the date of the judgment where the amount of the damage together with the liability therefor is in bona fide dispute. The interest in this case begins to run from the date of the judgment obtained in the trial court.
In conclusion, it must be conceded that this is one of the most ably tried and hotly contested lawsuits which it has been this Court's privilege to study. If attorneys have ever earned their fees, counsel for appellants have done so in this instance, for naught appellee's attorneys could do have they left undone. For the foregoing reasons, the order of the circuit court granting a new trial unless a remittitur of $2,500 is entered is erroneous and is hereby reversed and judgment entered here for appellants in the amount of $12,500.
Reversed and rendered.
RODGERS, P.J., and JONES, INZER and SUGG, JJ., concur.
NOTES
[1] Lititz Mut. Ins. Co. v. Boatner, 254 So.2d 765 (Miss. 1971); and Commercial Union Ins. Co. v. Byrne, 248 So.2d 777 (Miss. 1971).