IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 7, 2008

Charles R. Fulbruge III
Clerk

No. 07-60443

NORMAN J BROUSSARD; GENEVIEVE BROUSSARD

Plaintiffs-Appellees

v.

STATE FARM FIRE AND CASUALTY COMPANY

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:06-CV-6

Before JONES, Chief Judge, and WIENER and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Norman and Genevieve Broussard ("the Broussards") lost their home during Hurricane Katrina. State Farm Fire and Casualty Co. ("State Farm") rejected their homeowner's insurance claim, and the Broussards sued to collect benefits under their policy. The case went to trial and, at the close of all the evidence, the district court granted Judgment as a Matter of Law ("JMOL") in favor of the Broussards. The jury awarded the Broussards $2.5 million in punitive damages, which the district court remitted to $1 million. State Farm appeals. We reverse the grant of JMOL, vacate the award of punitive damages, and remand for a new trial.

## I. FACTS AND PROCEEDINGS

The Broussards' Biloxi home was completely destroyed during Hurricane Katrina, leaving only the foundation slab. The Broussards, who did not have flood insurance, brought a claim under their State Farm homeowners policy. The State Farm claims adjuster who inspected the site concluded that the "[e]vidence suggests [the] home was more damaged by flood than wind," and State Farm denied the Broussards' claim in its entirety.

The Broussards' homeowners policy contained two types of coverage. They had $90,524 in "named peril" coverage for their personal property, which covered losses caused by a list of perils, including windstorms. They had $120,698 in "open peril" coverage for their dwelling, which covered any "accidental direct loss" to their home. Both the personal property and the dwelling coverage excluded losses caused by water damage. Both coverages were also subject to an "Anti-Concurrent Cause" ("ACC") clause, which stated:

> We do not insure under any coverage for any loss which would not have occured in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss . . . .

It is undisputed that the Broussards' personal property and dwelling were a total loss and that the value of their personal property and dwelling met or exceeded the policy limits.

After State Farm denied their claim, the Broussards filed suit against State Farm in Mississippi state court. The Broussards claimed breach of contract and bad faith on the part of State Farm and sought the policy limits of their coverage, extra-contractual damages, and punitive damages. State Farm removed the case to the Southern District of Mississippi. The case was tried before a jury in two phases, causation and damage. Following the close of the evidence in the causation phase of the trial, both sides made oral motions for JMOL. The district court granted JMOL in favor of the Broussards on both the

personal property and dwelling claims. With regard to the personal property claim, the district court found that the parties had stipulated that the Broussards' property was destroyed during Hurricane Katrina, that Hurricane Katrina was a "windstorm," and that State Farm was liable under the "named peril" personal property coverage because "windstorm" was a named peril. With regard to the dwelling claim, the district court held that State Farm bore the burden of proving that the Broussards' loss was caused by the excluded peril of flooding. The district court noted that State Farm's expert admitted that he could not distinguish between the wind and water damage to the Broussards' home with any reasonable degree of probability. In light of this admission, the district court found that "there was no sound evidence upon which the finder of fact could rationally determine that [State Farm] had met its burden of proof" and entered JMOL for the Broussards.

During the damage phase of the trial, the district court gave the jury a punitive damage instruction. The jury awarded the Broussards $2.5 million in punitive damages, which the district court remitted to $1 million.

State Farm appeals the entry of JMOL on both the personal property and dwelling claims and seeks reversal or remittitur of the jury's punitive damages award. State Farm also appeals the district court's denial of its motion to strike the testimony of the Broussards' expert, James Slider, a structural engineer who testified that "wind or a tornado" destroyed the Broussards' home before the Katrina storm surge arrived. Finally, State Farm appeals the district court's denial of its motion for change of venue.

## II. DISCUSSION

The Broussards argue that their home was destroyed by "tornadic" winds before the Katrina storm surge arrived, and that they are entitled to recover under their homeowners policy for any losses which State Farm cannot show were caused by water, which is an excluded peril under both the personal

property and dwelling coverages. This Court has issued several Katrina-related insurance decisions since this case was tried in early 2007, including Tuepker v. State Farm Fire & Casualty Co., a Mississippi slab case interpreting a State Farm homeowners insurance policy whose provisions were identical to the Broussards' policy in all significant respects.[1]  507 F.3d 346, 350–53 (5th Cir. 2007); see also Leonard v. Nationwide Mut. Ins. Co., 499 F.3d 419, 423 (5th Cir. 2007) (holding that Nationwide Mutual homeowners insurance policy, which included an ACC clause, was valid and enforceable under Mississippi law). These and other recent Katrina-related cases inform this decision.  Because we hold that the district court erred as a matter of law in entering JMOL for the Broussards, we reverse the district court, vacate the award of punitive damages, and remand for a new trial.

A.    Judgment as a Matter of Law

The standard of review for rulings on motions for JMOL is de novo.  Evans v. Ford Motor Co., 484 F.3d 329, 334 (5th Cir. 2007).    This Court has held that motions for JMOL should be granted

> only if "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict. . . . On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied. . . ."

Brown v. Bryan County, 219 F.3d 450, 456 (5th Cir. 2000) (internal quotations omitted).  When evaluating the district court's grant of JMOL, we "consider all of the evidence, drawing all reasonable inferences and resolving all credibility

---

[1]  The claims in Broussard are different from the claims in Tuepker.  The Tuepker plaintiffs challenged the enforceability of the ACC clause and the applicability of the water damage exclusion to a hurricane-created storm surge.  507 F.3d at 348.  The main thrust of the Broussards' claim is that their home was destroyed by tornadic winds prior to the arrival of the storm surge.

determinations in the light most favorable to the non-moving party," State Farm. Id.

(1)    Personal Property "Named Peril" Coverage

We reverse the district court's grant of JMOL with regard to the Broussards' "named peril" personal property coverage. The district court erred when it found that the destruction of the Broussards' personal property by Hurricane Katrina was sufficient to establish the separate assertion that the property was destroyed by "windstorm," a "named peril" under the Broussards' personal property coverage.

Lunday v. Lititz Mutual Insurance Co. considered damage sustained by a Mississippi home during Hurricane Camille and held that, under "named peril" coverage, "the burden of proof was on the [insured] to prove that the damages sustained were covered by the peril insured against, that is, by direct action of the wind." 276 So. 2d 696, 699 (Miss. 1973). Although there was no question that the insured property was destroyed during Hurricane Camille, the Lunday court did not find that this automatically established that it was damaged by wind. Id. Likewise, a stipulation that the Broussards' personal property was destroyed by Hurricane Katrina is insufficient to establish that it was destroyed by a windstorm, since Hurricane Katrina unleashed both wind and water forces. Accordingly, we reverse the grant of JMOL with regard to the Broussards' personal property claim and remand to permit the Broussards to carry their burden of proving that the personal property was destroyed by a peril covered under their policy.

(2)    Dwelling "Open Peril" Coverage

We also reverse the district court's grant of JMOL to the Broussards on their dwelling "open peril" coverage. The district court granted JMOL because

it found that "there was no sound evidence upon which the finder of fact could rationally determine that [State Farm] had met its burden of proof" to show that the Broussards' home was destroyed by an excluded peril. "This Court reviews . . . the determinations that the parties met their burdens [of proof] under the clearly erroneous standard." Stevens Shipping & Terminal Co. v. JAPAN RAINBOW II MV, 334 F.3d 439, 443 (5th Cir. 2003).

The district court's conclusion that State Farm failed to meet its burden of proof under the dwelling coverage was clear error. State Farm's experts introduced sufficient evidence to permit a reasonable jury to find in its favor. Two of State Farm's experts, Kurt Gurley and Robert Dean, testified that the damage to the actual structure of the Broussards' home came from the storm surge. Gurley stated that it was "75% likely" that wind caused a relatively small amount of damage to the Broussards' roof before the storm surge arrived, but that Hurricane Katrina's winds were not strong enough to cause structural damage to the home. Gurley also opined that, given the data available regarding the Broussards' home, no other wind engineer could state more definitively whether there was wind damage or specify the extent of the damage more precisely.

State Farm's evidence was more than sufficient to withstand a motion for JMOL. A rational jury could conclude, based on the testimony of State Farm's experts, that the Broussards' home and personal property were destroyed by water. Wall v. Swilley, 562 So. 2d 1252, 1256 (Miss. 1990) ("Unless the evidence is so lacking that no reasonable jury could find for plaintiffs, the motion must be denied."). We reverse the district court's entry of JMOL for the Broussards on the dwelling coverage and remand for a new trial.

B.     Burdens of Proof

State Farm also argues that the district court erred in allocating the burdens of proof. "This Court reviews the allocation of the burden of proof de novo . . . ." Stevens Shipping, 334 F.3d at 443.

"Under Mississippi law a plaintiff has the burden of proving a right to recover under the insurance policy sued on," and this basic burden never shifts from the plaintiff. Britt v. Travelers Ins. Co., 566 F.2d 1020, 1022 (5th Cir. 1978); see also Home Ins. Co. v. Greene, 229 So. 2d 576, 579 (Miss. 1969) ("An insured seeking recovery on a policy insuring against fire has the burden of proving the loss and its extent."). In this case, the parties agreed that the home and its contents were a total loss, and the disputed issue is which peril caused the loss.

The parties bear different burdens of proof under the personal property and dwelling coverages.

> For [personal property] "named peril" coverage . . . the plaintiff has the burden of proving that any losses were caused by a peril covered by the policy. Under [dwelling] "open peril" coverage . . . the plaintiff still has the basic burden of proving his right to recover. However, under "open peril" coverage the insurer bears the burden of proving that a particular peril falls within a policy exclusion, and must plead and prove the applicability of an exclusion as an affirmative defense.

Tuepker, 507 F.3d at 356–57 (internal quotations and citations omitted). The Broussards' personal property and dwelling coverages are both subject to a water damage exclusion identical to the exclusion in Tuepker. Id. at 350–51.[2] The

---

[2] The Broussards' policy also contained an ACC clause identical to the one considered in Tuepker. 507 F.3d at 350–51. The clause applied to both the personal property and dwelling coverage in the State Farm policy. The ACC clause, like the water damage exclusion, is an affirmative defense, and State Farm bears the burden of pleading and proving that the ACC clause applies. Id. at 356–57. State Farm's position on appeal is that it did not rely on the ACC clause in denying the Broussards' claim, and that the claim was denied because "absent physical evidence of wind damage there was no way to pay the claim other than to speculate." Thus, State Farm has waived any defense based on the ACC clause.

parties do not dispute that this exclusion applies to any damage caused by the Hurricane Katrina storm surge.

State Farm argues that under the dwelling coverage, once it advances evidence to establish its affirmative policy exclusion defenses, the burden shifts back to the Broussards to prove that there is an exclusion to the defenses or to segregate covered from non-covered damages. In support of its theory, State Farm points to Texas cases such as Britt v. Cambridge Mutual Fire Insurance Co., which hold that "[o]nce an insurer has pled an exception to the insurance policy, the burden is on the insured to prove that the occurrence in question did not come within the exclusion of the policy." 717 S.W.2d 476, 482 (Tex. App. 1986). Mississippi courts have not explicitly addressed shifting burdens of proof under "open peril" policies, so we "must make an educated 'Erie guess' as to how the Mississippi Supreme Court would resolve the issue." Leonard, 499 F.3d at 431.

The Mississippi Supreme Court rejected a rule similar to State Farm's "shifting back" theory in a Hurricane Camille slab case construing a "named peril" policy. Lititz Mut. Ins. Co. v. Boatner, 254 So. 2d 765, 766 (Miss. 1971). The factual similarities between Boatner and the case at hand are striking. In Boatner, nothing was left of the insureds' home and its contents but a concrete slab. Id. at 765. The insureds argued that their home was destroyed by wind prior to the arrival of the hurricane-produced tidal wave. Id. at 767. The insurer admitted that some wind damage was probable, but withheld full payment under the policy because it argued that the home was actually destroyed by the tidal wave, an excluded peril. Id. at 766. The jury found in favor of the insureds and the Mississippi Supreme Court affirmed. Id. The court held that the insureds were required to introduce some evidence regarding causation to recover under a "named peril" policy, but rejected the rule "that the

8

burden of proof was upon the homeowners . . . [to] also show that [their home] was in no respect damaged by tidal wave . . . ." Id.

In Grace v. Lititz Mutual Insurance Co., another Hurricane Camille case, the Mississippi Supreme Court sustained a jury verdict for the insureds under a windstorm policy which excluded water damage. 257 So. 2d 217, 219, 224–25 (Miss. 1972). The Grace court stated that "[t]he rule is well established in this state that where the question presented to the jury was whether the loss was due to windstorm or to water, the entire question of proximate cause is treated as one of fact independent of the explicit application of any rule of law." Id. (citing Commercial Union Ins. Co. v. Byrne, 248 So. 2d 777, 781 (Miss. 1971)). The Grace court also reversed the trial court's remittitur of $2500 and awarded damages in the amount of the policy limits because the insurer never contested the fact that the insureds' property was a total loss and did not "offer any evidence at any time during the trial of what value or of what part of the [insureds'] property was destroyed by water prior to its destruction by wind." Id. at 225.

Boatner and Grace involved "named peril" policies under which the insured was required to prove that his loss was caused by a specified peril as part of his prima facie case. The Mississippi Supreme Court has not explicitly addressed the "shifting back" theory when considering an "open peril" policy. We think it unlikely, however, that the court would reject rules similar to State Farm's "shifting back" theory when considering "named peril" policies and embrace them when considering an "open peril" policy under which the insurer must prove causation by an excluded peril as an affirmative defense.

In support of this view, we note that the rule that causation is a fact question for the jury applies equally to "open peril" and "named peril" policies. In Byrne, a Hurricane Camille case involving an "open peril" policy, the Mississippi Supreme Court held that a directed verdict was not proper where the

plaintiff introduced some evidence that his house and personal property were damaged by wind prior to the arrival of flood waters from a nearby bayou. 248 So. 2d at 781. In language later quoted in Grace, the Byrne court held that causation was a question of fact "independent of the explicit application of any rule of law" which would take the issue away from the jury. Id.; see Grace, 257 So. 2d at 224. State Farm's "shifting back" theory seems to be the sort of "rule of law" which would operate in many cases to take the issue of causation away from the jury.

In light of Boatner, Grace, and Byrne, we hold that State Farm's "shifting back" theory is not the rule in Mississippi. Grace, 257 So. 2d at 224; Boatner, 254 So. 2d at 766; Byrne, 248 So. 2d at 781. On remand, the parties must meet their burdens of proof as outlined in Tuepker, 507 F.3d at 356–57, and the ultimate allocation of wind and water damages under the Broussards' dwelling coverage is a question of fact for the jury. Grace, 257 So. 2d at 224.

C.      Punitive and Consequential Damages

We also reverse the district court's decision to submit the punitive damages question to the jury. "In insurance contract cases, the trial court is responsible for reviewing all evidence before it in order to ascertain whether the jury should be permitted to decide the issues of punitive damages." Lewis v. Equity Nat'l Life Ins. Co., 637 So. 2d 183, 185 (Miss. 1994) (internal quotations omitted). If, upon reviewing all the evidence, the district court concludes that the insurer acted in bad faith, or that reasonable minds could differ regarding whether the insurer acted in bad faith, then the district court should send the issue of punitive damages to the jury. Id. at 185–86. The district court denied State Farm's motion for JMOL on punitive and extra-contractual damages and sent the issue to the jury. We review the district court's ruling on State Farm's motion for JMOL de novo. Sobley v. S. Natural Gas Co., 302 F.3d 325, 335–36 (5th Cir. 2002).

Under Mississippi law, insurers have a duty "to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation" and may be liable for punitive damages for denying a claim in bad faith. Liberty Mut. Ins. Co. v. McKneely, 862 So. 2d 530, 535 (Miss. 2003); U.S. Fid. & Guar. Co. v. Wigginton, 964 F.2d 487, 492 (5th Cir. 1992). The Broussards bear the burden of proving that State Farm acted in bad faith when it denied their insurance claim. Wigginton, 964 F.2d at 492.

Section 11-1-65(1)(a) of the Mississippi Code Annotated states that "[p]unitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Mississippi law does not permit parties to recover punitive damages unless they first prove that they are entitled to compensatory damages. MISS. CODE ANN. § 11-1-65(1)(b)-(c); Sobley, 302 F.3d at 330.

To recover punitive damages for bad faith denial of their insurance claim, the Broussards "must show that the insurer denied the claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights." Wigginton, 964 F.2d at 492. State Farm, on the other hand, "need only show that it had reasonable justifications, either in fact or in law, to deny payment." Id. The question of whether State Farm had an arguable basis for denying the Broussards' claim "is an issue of law for the court." Id. Insurers who are not liable for punitive damages may nonetheless be liable for "consequential or extra-contractual damages (e.g., reasonable attorney fees, court costs, and other economic losses)" where their decision to deny the insured's claim is without "a reasonably arguable basis" but does not otherwise rise to the level of an independent tort. Andrew Jackson Life Ins. Co. v. Williams, 566 So. 2d 1172, 1186 n.13 (Miss.

1990); see also Sw. Miss. Reg'l Med. Ctr. v. Lawrence, 684 So. 2d 1257, 1267–69 (Miss. 1996) (reversing an award of punitive damages but affirming an award of consequential damages including, inter alia, compensation for the plaintiff's reasonably foreseeable emotional distress following the denial of her claim).

We hold that State Farm had an arguable basis for denying the Broussards' claim in October 2005 and that a punitive damages instruction is not warranted on this ground. The State Farm claims adjuster who recommended denying the Broussards' claim examined the position of the home seaward of the debris line and the condition of trees on and around the Broussards' property. The adjuster concluded that the damage to the trees was more consistent with flooding than with tornadic winds and stated that "[o]ur investigation shows that the insured location and surrounding neighborhood was damaged by a tidal surge and flood" and denied coverage on this ground. Although the Broussards have pointed to some facts which suggest that wind destroyed their home prior to the arrival of the tidal surge, State Farm had an arguable basis for denying their claim based on the observations of its adjuster regarding the position of the debris line and the condition of trees on and surrounding the property. Dunn v. State Farm Fire & Cas. Co., 711 F. Supp. 1362, 1364–65 (N.D. Miss. 1988) (denying defendant insurer's motion for summary judgment because there were genuine issues of material fact, but rejecting plaintiff's claim for punitive damages because the facts, although contested, provided the insurer with an arguable basis for denying the plaintiff's claim).[3]

---

[3] The district court also found a basis for punitive damages in State Farm's legal position regarding burdens of proof. Under Mississippi law, however, an insurance company is not subject to punitive damages for referring a disputed legal question to the courts, even if the question is not resolved in its favor. Dunn v. State Farm Fire & Cas. Co., 927 F.2d 869, 874 (5th Cir. 1991). Although we reject State Farm's legal position regarding the "shifting back" burdens of proof, it is not liable for punitive damages for advancing this legal argument.

Although it is a much closer question, we also hold that State Farm is not liable for punitive damages for continuing to withhold payment under the policy after its expert opined that some covered wind damage likely occurred prior to the arrival of the storm surge. State Farm had a duty to re-evaluate the Broussards' claim which continued even after the claim was refused and the Broussards filed suit. See Gregory v. Cont'l Ins. Co., 575 So. 2d 534, 541 (Miss. 1990). State Farm's expert Gurley stated that there was a 75% likelihood that between none and 35% of the shingles on the Broussards' roof were damaged by wind prior to the arrival of the storm surge. State Farm was liable to the Broussards for this damage, however minor. See Dixie Ins. Co. v. Mooneyhan, 684 So. 2d 574, 584 (Miss. 1996).

Under the somewhat unusual circumstances of this case, however, punitive damages are not appropriate on this ground. The State Farm claim file reflects that the Broussards received a $2000 advance within ten days of Hurricane Katrina.[4] Counsel for State Farm stated at oral argument that it was State Farm's position that this amount, combined with the Broussards' two-percent deductible of about $2400, was adequate to cover the kind of minor roof damage discussed by Gurley. Without deciding whether this payment was in fact adequate, we hold that State Farm did not act with sufficient "malice or gross negligence" to merit punitive damages. Wigginton, 964 F.2d at 492. However, as State Farm lacked an arguable basis for denying this portion of the Broussards' claim, on remand the district court should consider whether additional actual or consequential damages are appropriate. Williams, 566 So. 2d at 1186 n.13.

Our inquiry does not end there. Mississippi courts have held that under

---

[4] State Farm's claim file indicates that this money was advanced immediately after the storm by the Broussards' insurance agent, who mistakenly thought that they had flood insurance.

certain limited circumstances, insureds may recover punitive damages even though the insurer had an arguable basis for denying their claim. Lewis v. Equity Nat'l Life Ins. Co., 637 So. 2d 183, 185 (Miss. 1994). Mississippi courts have sent the issue of punitive damages to the jury when the insurer's behavior in writing the insurance policy or handling the insurance claim breaches "an implied covenant of good faith and fair dealing" and rises to the level of an independent tort. Stewart v. Gulf Guar. Life Ins. Co., 846 So. 2d 192, 202–05 (Miss. 2002); Lewis, 637 So. 2d at 185. Mississippi courts have found independent torts based on the insurer's behavior in writing the policy, Stewart, 846 So. 2d at 202, and on the basis of grossly negligent claim investigation, id. at 204. The district court found that State Farm engaged in both kinds of behavior.[5]

(1)  Policy Terms

The district court found that punitive damages were warranted in part because State Farm "continued to urge an interpretation of its anti-concurrent cause clause that would entitle it to collect premiums from policyholders for what amounts to no coverage if even a small part of a loss was due to water." State Farm argues on appeal that it did not rely on the ACC clause to deny coverage to the Broussards. Even if the district court is correct and the ACC clause played a role in State Farm's treatment of the Broussards' claim, this is not a basis for a punitive damages instruction. In Leonard v. Nationwide Mutual Insurance Co., this Court held that an ACC clause similar to that relied

---

[5] The district court also faulted State Farm for placing the Broussards "in a most difficult position during a time of extreme economic hardship." Mississippi cases have recognized that insurance companies that use an insured's financial hardship to force an unjust settlement may deserve punitive damages. See Andrew Jackson Life Ins. Co. v. Williams, 566 So. 2d 1172, 1186–87 (Miss. 1990); Travelers Indem. Co. v. Wetherbee, 368 So. 2d 829, 835 (Miss. 1979). However, these cases have considered forced settlement in conjunction with other bad-faith behavior not at issue here, such as fraudulent sales practices. Williams, 566 So. 2d at 1175.

upon by State Farm is valid and enforceable under Mississippi law. 499 F.3d 419, 430, 435 (5th Cir. 2007); accord Tuepker, 507 F.3d at 354 ("Leonard governs this case, and compels the conclusion that the ACC Clause in State Farm's policy is not ambiguous, and should be enforced under Mississippi law."). State Farm cannot be liable for punitive damages solely for relying on a legally valid and enforceable clause in its insurance contract.

(2)    Negligent Claim Investigation

The district court found that State Farm "did not conduct a reasonably prompt investigation of all relevant facts before denying the [Broussards'] claim and, after conducting such an investigation, did not make a realistic evaluation of the claim." To qualify for punitive damages for negligent claim investigation, "the level of negligence in conducting the investigation must be such that a proper investigation by the insurer would easily adduce evidence showing its defenses to be without merit." Sobley, 302 F.3d at 342 (internal quotations omitted) (discussing a homeowners insurance policy). In other words, the Broussards must show "that further investigation would undercover evidence that would have undermined at least the arguable merit" of State Farm's defenses. Id. (internal quotations omitted).

This is not a case in which further investigation has "easily adduce[d] evidence" showing that State Farm's position lacks arguable merit. Even after extensive investigations by both parties, the question of whether the Broussards' property was first destroyed by wind or water remains an extremely close one. See supra, Part II(A). We hold that State Farm's fall 2005 claim investigation did not breach the implied covenant of good faith and fair dealing, and that punitive damages are not appropriate on this ground. We reverse the district court's decision to submit the question of punitive damages to the jury and vacate the jury's award of punitive damages.

D.    Motion to Exclude the Broussards' Expert Witness James Slider

State Farm appeals the admission of testimony by James Slider, a civil engineer who testified as an expert on behalf of the Broussards.  This Court "review[s] the district court's determination of admissibility of expert evidence under Daubert for abuse of discretion."  Knight v. Kirby Inland Marine Inc., 482 F.3d 347, 351 (5th Cir. 2007).  The Daubert factors for evaluating expert testimony include "whether the theory or technique the expert employs is generally accepted; whether the theory has been subjected to peer review and publication; whether the theory can and has been tested; whether the known or potential rate of error is acceptable; and whether there are standards controlling the technique's operation."  Id. (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 593 (1993)).

Slider, whose specialty is in structural engineering, opined that wind destroyed the Broussards' home prior to the arrival of the storm surge.  He considered and ruled out other causes for the initial damage to the Broussards' home by evaluating data from the Stennis Space Center and eyewitness testimony.  He also based his conclusions on physical evidence left on the Broussards' property.  State Farm objected to his testimony in part because his work had not been peer reviewed and he did not know of others who had used his methods.  The district court evaluated Slider's testimony in a written order and found that the data he relied on was sufficiently reliable to support his opinions.  After reviewing the record, we affirm and hold that the district court did not abuse its discretion when it admitted Slider's testimony.

E.    Motion for Change of Venue

The district court denied State Farm's change of venue motion.  This panel reviews the district court's venue rulings for abuse of discretion.  In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004).  This Court asks three questions: "Did the district court correctly construe and apply the relevant

statutes; . . . Did the district court consider the relevant factors incident to ruling upon a motion to transfer; and . . . Did the district court abuse its discretion in deciding the motion to transfer." Id. Relevant factors under 28 U.S.C. § 1404(a) include whether the proposed transfer venue is a forum in which the suit could originally have been brought, the convenience of the parties and witnesses, and the interests of justice. Id.

We hold that the district court did not abuse its discretion when it denied State Farm's motion for change of venue, notwithstanding the intensive pretrial publicity concerning Hurricane Katrina-related insurance claims. See id. As this Court noted in Mayola v. Alabama, even the "broad and intensive public awareness" stemming from notorious events like "the battlefield execution of Vietnamese civilians by Lt. William Calley, Jr., and other soldiers, and the high level conspiracy to cover up the Watergate break-in," was held not to have created a presumption of juror prejudice in either Calley v. Callaway, 519 F.2d 184, 203–13 (5th Cir. 1975) (Lt. Calley) or United States v. Haldeman, 559 F.2d 31, 60–69 (D.C. Cir. 1976) (Watergate). See 623 F.2d 992, 998–99 (5th Cir. 1980). The transcript reveals that the district court was very aware of its responsibility to protect the interests of justice by selecting a jury free from prejudice. Media-related matters took up seventeen pages in the voir dire transcript, and the record shows that at least ten prospective jurors were removed for cause in part because of opinions formed by pretrial publicity. In its written order denying State Farm's motion, the district court noted the extensive voir dire and "the additional expenses and the great inconvenience that individual plaintiffs would incur if the trial of this action and similar actions were moved to another division of this district." The district court's decision not to grant a change of venue was consistent with the change-of-venue statute, and it adequately weighed the factors set out in 28 U.S.C. § 1404. We affirm the denial of State Farm's motion for change of venue.

## III. CONCLUSION

We REVERSE the judgment of the district court entering JMOL in favor of the Broussards. We REVERSE and VACATE the jury's award of punitive damages. We AFFIRM the district court's admission of testimony from the Broussards' expert witness. We AFFIRM the district court's denial of State Farm's motion to change venue. We REMAND the case for a new trial.