# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CA-01486-SCT

*DR. JACK HOOVER AND MARGARET ANN
HOOVER*

*v.*

*UNITED SERVICES AUTOMOBILE
ASSOCIATION*


| | |
|---|---|
| DATE OF JUDGMENT: | 08/31/2011 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | DAVID NEIL HARRIS, JR. |
| | CLYDE H. GUNN, III |
| | CHRISTOPHER COLLINS VAN CLEAVE |
| | WILLIAM CORBAN GUNN |
| ATTORNEYS FOR APPELLEE: | CHARLES PATRICK COPELAND |
| | CHARLES G. COPELAND |
| | REBECCA SUZANNE BLUNDEN |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. ON CROSS-APPEAL: AFFIRMED - 11/07/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This case arises out of an alleged breach of contract and bad-faith denial of Dr. Jack

and Margaret Hoover's homeowner's insurance claim against United Services Automobile

Association ("USAA") following Hurricane Katrina ("Katrina"). The trial judge granted

USAA's motion for directed verdict as to the Hoovers' claims for: (1) the unpaid portion of losses; (2) mental anguish and emotional distress; and (3) punitive damages. The trial court further determined that there were issues of fact for the jury as to whether the Hoovers' roof structure was damaged, and as to the Hoovers' claim for additional living expenses ("ALE"). The jury found for the Hoovers and returned a verdict of $81,342.97 in compensatory damages. The Hoovers appealed and USAA cross-appealed.

**FACTS**

¶2.     The Hoovers presented evidence that they incurred $240,917.56 in costs to repair their property for losses inflicted by Katrina and $1,342.97 for ALE. The Hoovers also claimed an "additional $80,000 in future cost to replace . . . [the] roof structure."[1] USAA provided homeowners' insurance for the Hoovers.[2] USAA posited that the majority of the Hoovers' loss occurred on the lower floor of the home and was the result of excluded storm surge. USAA limited the "covered loss" to $56,748.17 and made payments totaling that amount over time. USAA denied that the Hoovers' roof structure needed to be replaced and that coverage extended to ALE.

---

[1]At various points, we will refer to the "roof structure." This is not to be confused with roof shingles. USAA paid to reshingle the roof on both the dwelling and the cabana. The "roof structure" refers to the actual roof framing of the dwelling, which USAA denied was damaged by Katrina.

[2]The pertinent coverage limits were $264,000 for the dwelling, $26,400 for other structures (10% of limit of liability for dwelling), and $52,800 for loss of use.

2

¶3. On August 11, 2008, the Hoovers filed a complaint against USAA in the Circuit Court of Jackson County alleging, *inter alia*, breach of contract and tortious bad-faith breach of contract. USAA filed its "Answer and Defenses[,]" and raised, as its seventh affirmative defense, that the "damages for which Plaintiffs seek recovery were either caused or contributed to by excluded water damage as defined in the policy."

¶4. A four-day jury trial was held before the Honorable Frank Vollor. Following the close of the Hoovers' case-in-chief, USAA moved for a directed verdict on all claims. The trial court granted USAA's motion as to the Hoovers' claims for mental anguish and emotional distress.

¶5. At the close of all evidence, the trial court ruled that "the only evidence present [was] that the damage to the lower part of the floor was done by the storm surge[,]" and, thus, did not allow that issue to go to the jury. However, the trial court determined that whether the roof structure was damaged was "still in dispute[,]" and "allow[ed] that [issue] to go to the jury[,]" along with the ALE claim. The jury awarded the Hoovers $81,342.97 in compensatory damages.[3] Thereafter, the trial court denied the Hoovers' claim for punitive damages. Final judgment was entered on September 2, 2011.

## ISSUES

¶6. On appeal, the Hoovers raise the following issues, restated as follows:

---

[3]The verdict was comprised of $80,000 to repair the damaged roof and $1,324.97 in ALE.

3

I.      Whether the trial judge erred by granting directed verdict in favor of USAA regarding the contractual damages in the amount of $240,917.56.

II.     Whether the trial judge erred by granting directed verdict in favor of USAA regarding the Hoovers' mental-anguish and emotional-distress claims.

III.    Whether the trial judge erred by granting a directed verdict in favor of USAA regarding the Hoovers' punitive-damages claims.

¶7.     On cross-appeal, USAA raises the following issues:

IV.     Whether the trial judge failed to properly apply the **Daubert** standards to Dr. Ralph Sinno's testimony that the Hoovers' roof structure was damaged.

V.      Whether the trial judge erred in allowing Sinno to testify as to the cost of replacing the roof structure.

## ANALYSIS

I.      Whether the trial judge erred by granting directed verdict in favor of USAA regarding the contractual damages in the amount of $240,917.56.

¶8.     The standard of review for the trial court's grant or denial of a motion for directed verdict is de novo. **Braswell v. Stinnett**, 99 So. 3d 175, 177-78 (Miss. 2012) (citing **Thompson v. Nguyen**, 86 So. 3d 232, 236 (Miss. 2012)).

¶9.     In **Corban v. United Services Automobile Association**, 20 So. 3d 601, 619 (Miss. 2009), this Court unanimously held that:

[w]ith respect to the "all-risk" coverage of "Coverage A-Dwelling" and "Coverage B-Other Structures," the Corbans are required to prove a "direct, physical loss to property described." Thereafter, *USAA assumes the burden to prove, by a preponderance of the evidence, that the causes of the losses are excluded by the policy, in this case, "[flood] damage."* USAA is obliged to indemnify the Corbans for all losses under "Coverage A-Dwelling" and "Coverage B-Other Structures" which USAA cannot establish, by a

4

preponderance of the evidence, to have been caused or concurrently contributed to by "[flood] damage."

(Emphasis added.) In the case *sub judice*, several facts are uncontradicted. The Hoovers had a USAA "all-risk" homeowners' policy that was in effect at the time of Katrina.[4] The proof presented by the Hoovers is that they suffered $240,917.56 in "direct physical loss" to their dwelling and other structures as a result of Katrina. The Hoovers satisfied the burden required by **Corban**.[5] The Hoovers were entitled to payment for those losses, unless USAA could "prove, by a preponderance of the evidence, that the causes of the losses are excluded by the policy, in this case, 'flood damage.'" **Id**.

¶10.     Nevertheless, at the close of all evidence, the trial court granted a directed verdict for USAA as to the unpaid portion of the Hoovers' dwelling losses. The trial court stated, in pertinent part,

> the proof is overwhelming that the lower part [of the house] was involved in a surge. There's nothing to contradict that. So the Court finds that the evidence – that's the only evidence present, that the damage to the lower part of the floor was done by the storm surge, saltwater surge, which I understand a lot of the testimony comes from Dr. Hoover himself . . . . *The court thinks the plaintiff should have had to put on something to show it was other than surge*.

(Emphasis added.)

---

[4]The pertinent language of the Hoovers' USAA homeowners' policy is identical to the USAA policy considered by this Court in **Corban**.

[5]In its brief, USAA acknowledged that the Hoovers had met their burden under **Corban**.

¶11.    USAA acknowledges the standard set forth in *Corban* but argues that it met its burden of proof "through documents, its own investigation, and the cross examination of [Dr. Hoover] that the lower part of the house was damaged by storm surge flooding, not wind." USAA contends that, "at that point, the burden shifted back to the Hoovers to put on some proof to create an issue of fact," and the Hoovers failed to meet the burden to put on contradictory evidence.

¶12.    In support of its argument that the burden shifted back to the Hoovers, USAA cites *Bayle v. Allstate Insurance Co.*, 615 F. 3d 350 (5th Cir. 2010). In *Bayle*, a Katrina case, the Fifth Circuit held that if the insurer "make[s] out a prima facie case that the cause of the uncompensated or under-compensated damage was excluded from coverage[,]" then "the burden shifts to the insured to present evidence demonstrating there remains a material issue of fact." *Id*. at 359. USAA's reliance on *Bayle* is unavailing, as that case applied Louisiana law. *Id*. USAA cites no authority under Mississippi law for the proposition that the burden of proof shifts back to the insured.

¶13.    In *Broussard v. State Farm Fire & Casualty Co.*, 523 F. 3d 618, 627 (5th Cir. 2008), the same court noted that "[t]he Mississippi Supreme Court has not explicitly addressed the 'shifting back' theory when considering an 'open peril' policy."[6] In *Broussard*, State Farm argued, inter alia, that "under the dwelling coverage, once it advance[d] evidence to establish

---

[6]*See* Eric M. Holmes, *Appleman on Insurance* § 192.09 (2d ed. 2008) ("'Open peril' coverage is . . . typical of coverage for dwellings and other structures on insured property . . . .").

6

its affirmative policy exclusion defenses, the burden shifts back to the Broussards to prove that there is an exclusion to the defenses or to segregate covered from non-covered damages." *Id*. at 626. State Farm's argument mirrored the one advanced by USAA in this case. After a thorough examination of Mississippi caselaw, the ***Broussard*** court rejected State Farm's "shifting back theory" as the rule in Missisissippi. *Id*. at 627. *Appleman on Insurance* refers to ***Broussard*** as "[t]he signature case on allocation of burden of proof for hurricane damages." Eric M. Holmes, *Appleman on Insurance* § 192.09 (2d ed. 2008).

¶14.     In ***Grace v. Lititz Mutual Insurance Co.***, 257 So. 2d 217, 219, 224-25 (Miss. 1972) (citing ***Commercial Union Insurance Co. v. Byrne***, 248 So. 2d 777, 781 (Miss. 1971)), this Court stated, "[t]he rule is well established in this state that where the question presented to the jury was whether the loss was due to windstorm or water, the entire question of proximate cause is treated as one of fact *independent of the explicit application of any rule of law*." (Emphasis added.) ***Broussard*** interpreted "State Farm's 'shifting back' theory . . . to be the sort of 'rule of law' which would operate in many cases to take the issue of causation away from the jury." ***Broussard***, 523 F. 3d at 627. The ***Broussard*** court stated, "the ultimate allocation of wind and water damages under the Broussard's dwelling coverage is a question of fact for the jury." *Id*. This statement is consistent with this Court's holding in ***Corban*** that the issue of whether the damage was caused by wind or excluded storm surge is "a question of fact for the jury." ***Corban***, 20 So. 3d at 619.

¶15.     The trial court's finding that the Hoovers "should have put on something to show that it was other than surge" was erroneous and in conflict with this Court's prior decisions,

7

including ***Corban***. USAA bears the burden to prove, by a preponderance of the evidence, that the loss was caused by, *or concurrently contributed to,* by an excluded peril. This issue of fact is one for the jury, and the burden of proof does not shift to the Hoovers.[7] Therefore, the trial court erred in granting a directed verdict as to the Hoover's unpaid damages.

      II.      Whether the trial judge erred by granting directed verdict in favor of USAA regarding the Hoovers' mental-anguish and emotional-distress claims.

¶16.   "[I]nsurers have a duty 'to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation[,]" and failure to perform this duty may render the insurer liable for extracontractual damages. ***Broussard***, 523 F. 3d 627-28 (quoting ***Liberty Mut. Ins. Co. v. McKneely***, 862 So. 2d 530, 535 (Miss. 2003)). However, "[e]xtracontractual damages, such as awards for emotional distress and [mental anguish] . . . are not warranted where the insurer can demonstrate 'an arguable, good-faith basis for denial of a claim.'" ***United Serv. Auto. Ass'n v. Lisanby***, 47 So. 3d 1172, 1178 (Miss. 2010) (quoting ***United Am. Ins. Co. v. Merrill***, 978 So. 2d 613, 627)). The "'plaintiff bears a heavy

---

[7]The dissent articulates a scholarly analysis of federal procedure, yet the "tennis match" scenario it advances is not the law in this case. Contrary to the dissent's contention that we conflate the burdens of production and persuasion, ***Corban*** addressed both. The insured bears the burden of producing evidence to make out a prima facie case of a "direct, physical loss to property described." ***Corban***, 20 So. 3d at 619. The insured also bears the burden of persuasion on this issue. The insurer bears the burden to produce evidence to support its affirmative defense "that the causes of the losses are excluded by the policy." ***Id***. The insurer also bears the burden of persuasion on its affirmative defense. These are the respective burdens under ***Corban*** and its progeny which create an issue of fact for the jury.

burden' of proving that the denial of an insurance claim was in bad faith." *Id*. (quoting

*Windmon v. Marshall*, 926 So. 2d 867, 872 (Miss. 2006)).

> The plaintiff's burden in proving a claim for bad faith refusal goes beyond proving mere negligence in performing the investigation. The level of negligence in conducting the investigation must be such that a proper investigation by the insurer would easily adduce evidence showing its defenses to be without merit.

*Lisanby*, 47 So. 3d at 1178 (quoting *Windmon*, 926 So. 2d at 872).

¶17.   Citing *Lisanby*, the trial court granted USAA's motion for directed verdict on the issue of mental anguish and emotional distress because "[USAA] had an arguable reason for the denial of the claim." The Hoovers argue that the trial court erred in granting directed verdict because "[USAA] failed to present any evidence that any investigation was conducted regarding the losses USAA alleged were excluded from coverage."

¶18.   On September 23, 2005, insurance adjuster Michael Long inspected the Hoovers' home. According to Long's report, "the dwelling sustained approximately 4 f[ee]t of water inside due to storm surge." Long's "estimate include[d] repairs only to damages [he] was clearly able to determine were due to wind." Long determined that the roofs on the dwelling and cabana needed to be replaced, along with fencing and the back-yard playhouse. Long also included interior water damage to the ceilings in his estimate. However, Long did not include damage to the pool liner "as it was not clear if wind caused the damage." Long did not establish a reserve for ALE.

¶19.   On September 24, 2005, USAA hired an engineering firm, SEA, Ltd., to inspect the Hoovers' home. USAA's request to SEA stated, in pertinent part, "[p]lease inspect and offer

a professional opinion regarding causation, i.e., wind vs. flood surge. We need to know if direct physical loss by wind contributed to the destruction and/or damage to the building. If yes, please identify the related building damage." On October 2, 2005, SEA engineer Richard Schimizze conducted an inspection and submitted a detailed report to USAA.[8] SEA opined that

> about 3 [feet] of floodwater had inundated the home. All material damage located below the first-floor ceiling in the home was the result of the floodwater and was clearly not related to the high winds. All damage to the roofs of both structures was directly caused by the high winds of the storm. Water damage at or above the first-floor ceiling in the home was indirectly caused by the high winds that penetrated the enclosure and allowed rainwater to enter the upper portions of the structure . . . . [T]he pool damage was caused by the large volume of floodwater produced by the hurricane surge.

¶20. Thereafter, Dr. Hoover presented USAA with additional information pertinent to the cause of his loss that he requested USAA consider. *Inter alia*, Hoover sent USAA a weather report from AccuWeather and the report of Dr. Ralph Sinno, which opined that the Hoovers' roof structure was damaged by wind, and he continued to seek payment for ALE. On each occasion, USAA forwarded the information to SEA and requested an updated report. SEA issued new reports which affirmed its initial opinion as to Hoovers' damage and disputed Dr. Sinno's opinion that the roof structure had been damaged.

¶21. The record supports the trial court's finding that USAA had an "arguable basis" for denying a portion of the Hoovers' damages. USAA relied on the investigation of its adjusters

---

[8]The SEA report is dated January 25, 2006. However, the report indicates that its findings were communicated verbally to Long on October 10, 2005, and to "Bill McNamara of USAA" on October 11, 2005.

and the reports of SEA in denying certain aspects of the claim which were deemed excluded.

As such, the trial court did not err in granting a directed verdict on this issue.

      III.     Whether the trial judge erred by granting a directed verdict in favor of USAA regarding the Hoovers' punitive-damages claims.

¶22.    In order to recover punitive damages, the Hoovers "must show that [USAA] denied the claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights." **Broussard**, 523 F. 3d at 628 (quoting **U.S. Fid. & Guar. Co. v. Wigginton**, 964 F. 2d 487, 492 (5th Cir. 1992)). The trial court found that USAA had an "arguable basis" for denying part of the Hoovers' claim. We can discern no error by the trial court in granting a directed for USAA on the issue of punitive damages.

## Cross-appeal

      IV.     Whether the trial judge failed to properly apply the **Daubert** standards to Dr. Ralph Sinno's testimony that the Hoovers' roof structure was damaged.

¶23.    This Court has stated:

> [T]he admission of expert testimony is within the sound discretion of the trial judge . . . . Therefore, the decision of a trial judge will stand unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion. Mississippi law requires the trial court to ensure that proposed [expert] testimony satisfies Rule 702 . . . . In **McLemore**, this Court adopted the **Daubert/Kumho Tire** rule as the standard for admissibility of expert witness testimony.

**Rebelwood Apartments RP, LP v. English**, 48 So. 3d 483, 494 (Miss. 2010) (citing **Miss. Transp. Comm'n v. McLemore**, 863 So. 2d 31, 34 (Miss. 2003); **Kumho Tire Co., Ltd. v.**

*Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); *Daubert v. Merrell*

*Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993))

¶24.     Rule 702 provides:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the *testimony is based upon sufficient facts or data*, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably *to the facts of the case.*

Miss. R. Evid. 702 (emphasis added).

¶25.     "[A]n expert's qualification and reliability of testimony are separate questions."

*Rebelwood*, 48 So. 3d at 494 (citing *Bullock v. Lott*, 964 So. 2d 1119, 1129 (Miss. 2007)).

On this issue, USAA's argument to the trial court and this Court revolves around the

"reliability" of Dr. Sinno's testimony, and not his qualifications.[9] USAA challenged Dr.

Sinno's testimony because he "[had] not done a technical structural inspection of [the]

house." Thus, USAA argues that Dr. Sinno's testimony failed to meet the requirement of

Rule 702 in that it was not "based upon sufficient facts or data" and he did not "apply the

principles and methods reliably to the facts of the case." Miss. R. Evid. 702.

¶26.     Dr. Sinno's testimony reveals that he did not inspect the Hoovers' home before

issuing his report that the roof structure had been damaged and would require replacement.

---

[9]The trial judge found Dr. Sinno was "eminently qualified" to testify. Dr. Sinno has had a lengthy career in the field, including being a professor of engineering for twenty-four years. He is a fellow with the American Society of Civil Engineering and has spent years researching, testing, and writing on "wind loading."

But, his testimony clearly exemplifies the basis of his knowledge and subsequent opinion. Dr. Sinno had spent years researching "wind loading," and in 2005 was the first "in the world" to duplicate hurricane wind in the laboratory and study its effect on structures. He testified, "everything I am going to talk about today is actually test results, test products, not theory . . . ." Dr. Sinno possessed the information regarding wind velocities that the Hoover home would have encountered, and based on his research regarding wind loading on structures, he was qualified to give his opinion on the effects that winds would have had on the Hoovers' roof structure. Moreover, USAA cross-examined Dr. Sinno regarding his methods, his findings, and the fact that he had never inspected the home prior to writing his report. USAA also countered Dr. Sinno's testimony with that of its own expert.

¶27.	Although Dr. Sinno did not inspect the Hoover home prior to issuing his report, he did inspect it prior to testifying at trial. He testified that the findings of his inspection supported the conclusion of his report. Because his report was not admitted as evidence, USAA can only claim that his testimony at trial was not based on sufficient facts or data. The fact that Dr. Sinno did inspect the house prior to testifying negates USAA's argument that his testimony lacked a sufficient basis because he failed to inspect. Therefore, the trial court did not abuse its discretion in allowing Dr. Sinno's testimony on this issue.

V.	Whether the trial judge erred in allowing Sinno to testify as to the cost of replacing the roof structure.

¶28.	On this issue, USAA challenges both Dr. Sinno's qualifications and reliability. First, USAA argues that Dr. Sinno is not an expert on the cost to repair residential roofs. On *voir*

13

*dire*, Dr. Sinno testified that, as an engineering professor, he taught classes in which curriculum included construction-cost estimation, itemizing costing and other kinds of costing, *inter alia*. His qualifications as a structural engineer were properly presented to the trial court. The trial judge did not abuse his discretion by allowing Dr. Sinno to provide expert testimony as to the cost to replace the roof structure.

¶29.    Second, USAA argues that Dr. Sinno did not have a reliable basis based on the facts of the case to form his opinion as to the cost to replace the roof. Specifically, USAA argues that Dr. Sinno "fail[ed] to include essential facts" such as "board feet of lumber, pounds of nails, man hours," etc. Dr. Sinno testified that he used a cost-plus estimate based on known values to arrive at his calculations. He assessed that it would cost $40 per square foot to replace the roof, and multiplied this by the total square footage of the house. Although this was not the method USAA suggests he should have used, Dr. Sinno nonetheless used an accepted method for estimating the cost to repair the roof. Moreover, USAA cross-examined Dr. Sinno about this method of determining cost. The trial court did not abuse its discretion in concluding that Dr. Sinno was qualified to provide expert testimony as to the cost to repair the Hoovers' roof, and that his method was based on sufficient facts to meet the requirements or Rule 702.

### CONCLUSION

¶30.    Based on this analysis, the trial court applied an incorrect legal standard and improperly shifted the burden of proof to the Hoovers. We reverse the trial court's grant of a directed verdict as to the unpaid damages, and remand the case for a jury to determine

14

whether USAA proved by a preponderance of the evidence that the unpaid loss was caused by excluded storm surge. The trial court did not err in directing a verdict for USAA as to the Hoovers' claims for mental anguish, emotional distress, and punitive damages. Therefore, on direct appeal, we affirm in part, reverse in part, and remand. The trial court did not err in admitting the expert testimony of Dr. Sinno as to whether the roof structure was damaged or the cost to repair such damage. Therefore, on cross-appeal, we affirm.

¶31.    **ON DIRECT APPEAL: AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. ON CROSS-APPEAL: AFFIRMED.**

**LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, J. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J. WALLER, C.J., NOT PARTICIPATING.**

**DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶32.    The majority incorrectly concludes that the trial judge "improperly shifted the burden of proof to the Hoovers." This did not happen. To say that the "burden of proof" never leaves the party asserting a claim or defense is not to say that the defending party never has a burden.

¶33.    The burden of proof is actually divided into two burdens or parts: The burden to produce evidence, and the burden to persuade. The trial of an issue – whether a claim or defense – proceeds in three stages. In stage one, the party asserting a claim or defense has the burden of producing enough credible evidence to establish a prima facie case for the claim or defense.

15

¶34. Once this burden – which never moves from the party asserting the claim or defense – is met, the trial of the issue moves to stage two, in which the defending party has the burden of producing evidence sufficient to create a jury issue. When a defending party fails to meet this burden – that is, fails to produce evidence sufficient to create a jury issue – the party asserting the claim or defense is entitled to a directed verdict on the claim or defense.

¶35. Finally, during stage three, the party asserting the claim or defense has the burden of persuading the jury that the evidence supports the claim or defense by the applicable standard, whether preponderance of the evidence, clear and convincing evidence, or beyond a reasonable doubt.

¶36. USAA asserted a defense, claiming that a policy exclusion applied. During stage one, it certainly produced sufficient evidence to support the defense. During stage two, the Hoovers not only failed to produce evidence sufficient to create a jury issue as to USAA's defense, they failed to produce any evidence at all. Therefore, the issue never made it to stage three.

¶37. The trial judge, who clearly recognized that USAA had the burden of proof correctly observed that – because USAA had produced sufficient, competent, credible evidence to support its policy exclusion – it had, as a matter of law, met its burden of proof, absent some contrary proof from the Hoovers. The trial judge's position is perfectly supported by the Fifth Circuit's opinion in ***Bayle v. Allstate Insurance Co.***[10]

---

[10] ***Bayle v. Allstate Ins. Co.***, 615 F.3d 350, 359 (5th Cir. 2010).

16

¶38. Had the Hoovers met their burden of production – that is, had they come forward with contrary proof – a jury issue would have been created, and the issue would have been submitted to the jury for decision. ***But the burden of persuasion still would have been on USAA***. The majority forgets that USAA always had the burden of producing proof sufficient to establish a prima facie case, and it confuses the Hoovers' burden of producing evidence in order to create a jury issue, with USAA's burden of persuasion.

¶39. Justice Coleman's opinion – that the Hoovers' failure to produce any contrary evidence properly resulted in a directed verdict on the issue – is exactly correct, under the facts of this case. But I wish to point out that there may be cases where the evidence supporting an exclusion presented by the insurance company is so thin and lacking in credibility that a trial judge would be justified in submitting its credibility to the jury, even in the absence of contrary evidence. Stated another way, a policyholder may demonstrate that a jury question has been created in two ways: (1) by producing contrary evidence, or (2) by persuading the trial judge that the jury should be allowed to decide whether the insurance company's uncontradicted evidence is so lacking in credibility that it ought to be rejected. In either case, the burden to produce evidence establishing a prima facie case, and the burden of persuasion remains always with an insurance company as to its affirmative defenses.

**COLEMAN, J., JOINS THIS OPINION**.

**COLEMAN, JUSTICE, DISSENTING:**

¶40. Burden of proof is a broad phrase, and its meaning encompasses at least two subsets – the burden of persuasion and the burden of production. The majority's analysis and result

17

would be correct were the issue in the case the burden of persuasion – which never left USAA as to its affirmative defense. However, the burden of production did indeed move to the plaintiff once USAA produced competent evidence supporting its affirmative defense. Because I believe the majority wrongly conflates the two different burdens in a way that leads to an incorrect result and statement of the law, I respectfully dissent.

¶41.    There exist at least two categories of burdens of proof, "the device to compel evidence and the device to deal with uncertainty," and until the end of the nineteenth century courts indeed referred to both with the single phrase "burden of proof." *See* 21B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure, Evidence* § 5122 (2d ed. 1987).[11] However, in later decades various terms emerged for them as it became clear that distinction between the two indeed had a difference. *Id.* "One burden is that of producing evidence, satisfactory to the judge, of a particular fact in issue. The second is the burden of persuading the trier of fact that the alleged fact is true." *McCormick on Evidence* § 336 (Kenneth S. Broun, et al., eds., 7th ed. 2013).

---

[11] We often cite with approval Wright and Miller's encyclopedic work on federal civil procedure. *See Indemnity Ins. Co. of North America v. Guidant Mut. Ins. Co.*, 99 So. 3d 142, 154 (¶ 34) (Miss. 2012) (citing Wright and Miller for the proposition that oral testimony may be admitted at a hearing on a motion for summary judgment); *Jackson Public Sch. Dist. v. Head*, 67 So. 3d 761, 767 (¶ 23) (Miss. 2011) (citing Wright and Miller to support holding that, in the context of a motion to dismiss for want of prosecution, any prejudice resulting from the delay must be weighed against the preference for a decision on the merits); *see also Calvert v. Griggs*, 992 So. 2d 627, 631-632 (¶ 10) (Miss. 2008). Finding a paucity of cases from our own state's jurisprudence explaining the difference, I now turn to their thorough treatment of the history and practical effects of burdens of proof and presumptions.

¶42.    We ascribe standards of proof to the burden of persuasion, *e.g.*, beyond a reasonable doubt and by a preponderance of the evidence, because in doing so courts and legislatures can match the difficulty of the burden to the importance of any public policies that might be affected.  21B *Fed. Prac. & Proc., Evid.* § 5122 (2d ed. 1987).  The standards of proof reflect that one party – usually the plaintiff but the defendant in most affirmative defenses – must persuade the trier of fact of the truth of disputed facts to the assigned degree.  *Id.*

¶43.    The burden of production, on the other hand, differs significantly in nature.  It "refers to the obligation of the party to produce enough evidence at trial to justify sending the case to the jury."  *Id.*  "The party who fails to satisfy [the burden of production] will be sanctioned by the court's entry of a directed verdict in favor of her opponent."  *Id.*; *see also McCormick on Evidence* § 336 (Kenneth S. Broun, et al., eds., 7th ed. 2013) ("The burden of producing evidence is a critical mechanism in a jury trial, as it empowers the judge to decide the case without jury consideration when a party fails to sustain the burden.").  Wright and Miller list the following distinctions between the burdens of persuasion and production:

- The burden of production is in the hands of the judge; the jury enforces the burden of persuasion.

- The sanction for failure to carry the burden of production is a directed verdict for the adversary; the sanction for failure to carry the burden of persuasion is a jury verdict for the opposing party.

- The judge must instruct the jury on the burden of persuasion; the jury never need hear about the burden of production.

- The burden of production can arise each time the party with the production burden rests which may be several times during the trial; the burden of

19

persuasion comes into play only once—when the case is submitted to the jury.

- Since it can only arise once, it is sometimes said that the burden of persuasion never shifts. On the other hand, writers suppose that the burden of production can shift back and forth as the parties take turns introducing evidence. . . .

- Finally, the two burdens of proof are related in that the burden of production normally falls on the party with the burden of persuasion. On the other hand, unless the burden of production is satisfied, the burden of persuasion will never arise because the judge will take the case from the jury.

21B *Fed. Prac. & Proc., Evid.* § 5122 (2d ed. 1987) (citations omitted).

¶44.  "It is recognized that as to any given issue the burden of persuasion and the burden of production of evidence generally both fall on the same party at the beginning of trial, that the burden of persuasion does not thereafter shift, but that the burden of production may shift back and forth as each side produces evidence, takes advantage of presumptions or the like." *Simpson v. Home Petroleum Corp.*, 770 F.2d 499, 503 (5th Cir. 1985).  "[I]t is everywhere agreed that the other burden, i.e., the burden of producing evidence . . . , may and often does shift back and forth between the parties like a tennis ball in play . . . ." *Id.* (quoting Ray, *Texas Law of Evidence* § 46 (3rd ed. 1980)).

¶45.  As noted above, not many Mississippi cases discuss the distinction between the burdens of production and persuasion, but our courts have not left the tablet wholly blank. We have, for example, used the two phrases in a manner consistent with the above discussion in cases involving will contests.  In *Clardy v. National Bank of Commerce of Mississippi*, 555 So. 2d 64 (Miss. 1989), we wrote:

20

Once the proponent has shouldered his burden of production such that he has made out a prima facie case, the burden of production shifts to the contestants. What is critical for present purposes is that the burden of persuading the trier of fact on the issues of due execution and testamentary capacity rests on proponent throughout and never shifts to the contestants.

*Id.* at 66. The idea of having two types of burden of proof – one which shifts and the other which cannot – is not wholly new to Mississippi law.[12]

¶46. Turning to the case *sub judice*, I agree with the majority's analysis as applied to the burden of *persuasion*, but I disagree that the burden of *production* does not shift. In holding that Mississippi prohibits burden-shifting, the majority relies upon the following language from ***Corban v. United Services Automobile Association***, 20 So. 3d 601 (Miss. 2009):

This Court finds that with respect to the "all-risk" coverage of "Coverage A-Dwelling" and "Coverage B-Other Structures," the Corbans are required to prove a "direct, physical loss to property described." Thereafter, USAA assumes the burden to prove, by a preponderance of the evidence, that the causes of the losses are excluded by the policy, in this case, "[flood] damage." USAA is obliged to indemnify the Corbans for all losses under "Coverage A-Dwelling" and "Coverage B-Other Structures" which USAA cannot establish, by a preponderance of the evidence, to have been caused or concurrently contributed to by "[flood] damage."

*Id.* at 619 (¶ 51). It is clear that the ***Corban*** Court, in writing about the burden of proving facts by a "preponderance of the evidence" referred to what has come to be known over the past century or more as the burden of persuasion, discussed above. Standards of proof do not apply to the burden of production. 21B *Fed. Prac. & Proc., Evid.* § 5122 (2d ed. 1987).

---

[12] Accordingly, elucidating the distinctions is not a mere scholarly pursuit based only on federal civil procedure, but it is a more full explication of something that already exists, obscured in the background though it may be, in our state's jurisprudence and must be fully understood to reach the correct holding in the case *sub judice*.

¶47. With respect, the majority again misses the importance of the distinction when it refuses to find persuasive the Fifth Circuit's opinion in ***Bayle v. Allstate Insurance Co.***, 615 F.3d 350 (5th Cir. 2010). Clearly, when the ***Bayle*** Court wrote that the burden shifted to the insured "*to present* evidence demonstrating there remain[s] a material issue of fact," ***Id.*** at 359 (emphasis added), it wrote of the burden of producing evidence and not the burden of persuading the finder of fact.

¶48. The majority incorrectly writes that the argument of State Farm in ***Broussard v. State Farm Fire and Casualty Co.***, 523 F.3d 618 (5th Cir. 2008), mirrored that of USAA here. In ***Broussard***, the trial court granted a directed verdict *against* State Farm, and State Farm argued that it had produced evidence that created an issue of fact. ***Id.*** at 625. State Farm was not arguing that it had met its burden of production and that the plaintiffs had failed to produce evidence creating an issue of fact, which is USAA's argument in the instant case. In any event, when making its ***Erie*** guess regarding the correct burdens of proof, the ***Broussard*** Court relied on "the rule that causation is a fact question for the jury." ***Broussard***, 523 F.3d at 627. Accordingly, the ***Broussard*** Court concerned itself primarily with the burden of persuasion. The jury never concerns itself with the burden of production. 21B *Fed. Prac. & Proc., Evid.* § 5122 (2d ed. 1987).

¶49. When the trial judge stated his understanding that "the plaintiff should have to had to put on something to show it was other than surge," he was not incorrectly reassigning the burden of persuasion. He *did not* say he would require the plaintiffs to convince the jury by a preponderance of the evidence that conflicting evidence showed the damage was caused

22

by something other than surge. Rather, he was correctly observing that when the insurer provided credible proof of causation, the burden of *production* of evidence moved to the plaintiff to create an issue of fact. **DeLaughter v. Womack**, 250 Miss. 190, 211-212, 164 So. 2d 762, 771 (1964) (after plaintiff made out *prima facie* case of negligence, defendants were required to produce evidence to the contrary), *overruled on other grounds by **Hall v. Hilbun***, 466 So. 2d 856, 866 (Miss. 1985); *see also McCormick on Evidence* § 336 (Kenneth S. Broun, et al., eds., 7th ed. 2013) ("Clearly, the principal significance of the burden of persuasion is limited to those cases in which the trier of fact is actually in doubt [as to the truth of a disputed fact issue]"). Because the plaintiff failed to produce competent, contrary evidence, there existed no disputed facts as to which the trier of fact needed to be persuaded by a preponderance of the evidence. The trial court correctly analyzed that the plaintiffs had not done so, that no issues of material fact existed for the jury, and entered judgment in favor of the insurer as required by law.

¶50. Although I agree with the majority's analysis of the other issues raised by the appellants, pursuant to the above analysis I would affirm the trial court. Accordingly, I dissent.

   **DICKINSON, P.J., JOINS THIS OPINION.**