# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 14-60300

United States Court of Appeals
Fifth Circuit

**FILED**

June 17, 2015

Lyle W. Cayce
Clerk

———————

DANIEL F. DEY,

Plaintiff - Appellant

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant - Appellee

———————

Appeal from the United States District Court
for the Southern District of Mississippi

———————

Before HIGGINBOTHAM, DAVIS, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Daniel Dey appeals the district court's grant of summary judgment to State Farm Mutual Automobile Insurance Company on his claim of bad faith, and also its grant of State Farm's motion to amend the judgment entered after a jury verdict on compensatory damages. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2009, Dey's vehicle was struck from the rear by a police officer's vehicle in Gulfport, Mississippi. At the time of the accident, Dey had uninsured motorist ("UM") benefits in the amount of $100,000. Under Mississippi law, the police officer was properly considered an uninsured motorist. In January 2010, Dey put State Farm on notice of a potential UM

No. 14-60300

claim, and, in May 2011, he submitted a settlement brochure to State Farm. The brochure included $12,080.50 in medical bills, $5,777.02 in lost wages and mileage, and $13,871.02 in "special damages," for a total of $31,728.54. Dey demanded $125,000 in "full and final settlement" for the claim. The submission also included medical records. One record was from Dey's physician, Dr. Noblin, dated March 9, 2010, stating that Dey "may be moving towards a surgical treatment." Another record from Dr. Noblin, dated seven months later, stated that Dey "has reached maximum medical improvement," that Dr. Noblin does "not expect [Dey's] condition to worsen," and that "[f]urther medical or surgical treatment is not expected to result in significant change in [Dey's] condition." Also submitted was a patient history worksheet which indicated Dey had a history of back pain.

On June 14, a State Farm adjuster prepared an Injury Evaluation Report which put the value of the claim between $37,000 and $47,000. On June 17, Dey informed State Farm that he had exhausted his administrative remedies and demanded the policy limit of $100,000. On July 8, the adjuster was given authority to settle the claim for up to $47,000. State Farm offered Dey $37,000. Dey rejected the offer and requested the $100,000 policy limit. State Farm increased its offer to $45,000. Dey rejected this offer as well.

On February 6, 2012, Dey sent State Farm a letter stating that he continued to experience medical problems as a result of the accident. He included a medical report from Dr. Winters, dated November 16, 2011, which noted that Dey "clearly still has some problems," but that "[h]e doesn't have any signs that would require surgery." In the letter, Dey again requested the policy limit of $100,000. On February 23, State Farm advised Dey that an impasse had been reached and tendered the amount of its initial settlement offer – $37,000.

In April, Dey demanded that State Farm provide an additional $13,000,

2

No. 14-60300

based on his belief that State Farm's last settlement offer was for $50,000. State Farm advised Dey of his misunderstanding of the last offer. Dey continued to demand an additional $13,000. On August 17, 2012, Dey provided State Farm with new medical records. The records, from a June 1 visit to Dr. Noblin, recommended shoulder surgery.

Dey filed this suit on September 19, 2012, in Mississippi state court. He sought damages based on an uninsured motorist claim, bad-faith denial of the claim, and conversion. State Farm removed the case to federal court based on diversity jurisdiction. On January 24, 2013, the parties' Rule 26(f) conference was held. On the same day, State Farm requested a medical authorization from Dey. On March 7, Dey wrote to State Farm again requesting the policy limit of $100,000. He submitted records from his surgery that was performed in December 2012. In all, there were $44,841.50 in medical expenses. He also informed State Farm that, as a result of the shoulder surgery, he had to take more time off of work. State Farm responded that questions remained regarding the mechanism of injury and causation; thus, its evaluation remained unchanged. In April, Dey provided State Farm with the medical authorization to permit review of his previous records. In May, Dey was deposed. On the day of his deposition, Dey advised State Farm in a letter that his doctors were available for a deposition and again requested the policy limit. State Farm responded that it was just beginning to receive records related to Dey's medical history and that a response would be forthcoming once the records were reviewed.

In July, an expert retained by State Farm to evaluate Dey's medical records submitted a report which stated he was "unable to determine the etiology of the need for surgery" and that "any shoulder specialist would be unable to assign the need for surgery to the accident . . . to any degree of medical probability given the delay between the initial release [by Dr. Noblin]

3

No. 14-60300

and the determination of the need for surgery."

On August 13, 2013, State Farm informed Dey that its evaluation remained unchanged.  Two days later, it filed a motion for partial summary judgment on Dey's bad-faith and conversion claims.  The district court granted the motion, which removed from the case the possibility of punitive damages. In February 2014, a trial was held on the uninsured motorist claim.  The jury's verdict was for $229,400.50, consisting of $54,400.50 in economic damages and $175,000 in non-economic damages.  The district court entered a final judgment in the amount of $192,400.50 after deducting the $37,000 that State Farm had paid to Dey in February 2012.  The next day, State Farm filed a motion to amend the judgment under Federal Rule of Civil Procedure 59(e), arguing that, because Dey's uninsured motorist coverage was limited to $100,000, the judgment should have been for $63,000. The district court agreed and amended the judgment accordingly. Dey timely appealed.

## DISCUSSION

Dey claims error in the dismissal of his bad-faith claim and the grant of the Rule 59(e) motion to amend the judgment.  We examine each claim.

I.    *Dey's bad faith claim for punitive damages*

We review a district court's grant of summary judgment *de novo. Crownover v. Mid-Continent Cas. Co.*, 772 F.3d 197, 201 (5th Cir. 2014). Because jurisdiction in this case is based on diversity, we apply the substantive law of the forum state, which is Mississippi. *Id.*

Dey states that "[t]he central issue in this Appeal is whether or not State Farm had an arguable reason to deny payments of the policy limits to Mr. Dey." The district court held that it did.   It found that, initially, the delay was due to the parties' disagreement over the value of the claim, which did not "give[] rise to a claim for bad faith denial[.]"   Further, once Dey provided the new medical records indicating surgery was necessary, State Farm had an arguable

4

basis for the delay or denial as it was "investigat[ing] new information" provided by Dey.  The district court analyzed Dey's claim in two distinct time periods.  The usual course though, as reflected in state court opinions, is to examine the entire time period as a unit: "The totality of the circumstances and the aggregate conduct of the defendant must be examined before punitive damages are appropriate." *Hartford Underwriters Ins. Co. v. Williams*, 936 So. 2d 888, 896 (Miss. 2006) (collecting cases).  The district court held that State Farm's conduct did "not rise to the level of an independent tort" and dismissed Dey's bad faith claim.

Mississippi law imposes on insurers "a duty 'to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation," and insurers "may be liable for punitive damages for denying a claim in bad faith." *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 627 (5th Cir. 2008) (first quote from *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 535 (Miss. 2003)).  A bad faith claim "is an independent tort separable in both law and fact from [a] contract claim . . . ." *Hartford Underwriters Ins. Co.,* 936 So. 2d at 895 (citation and internal quotation marks omitted).  In order to succeed on a bad faith claim, a claimant "must show that [the insurer] denied the claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights." *Hoover v. United Servs. Auto. Ass'n*, 125 So. 3d 636, 643 (Miss. 2013) (citation omitted).  Because the issue was resolved on summary judgment, we give *de novo* review to whether the evidence submitted revealed the presence of genuine disputes of material fact.

Dey had to present some evidence to demonstrate a dispute of material fact as to whether State Farm lacked an arguable or legitimate basis on which to deny his claim.  If there was such evidence, Dey then must provide evidence that State Farm acted with "malice or gross negligence in disregard of the

No. 14-60300

insured's rights." *Hoover*, 125 So. 3d at 643 (citation omitted).

### A. Arguable basis for denial of Dey's claim

A plaintiff has "a heavy burden in demonstrating . . . that there was no reasonably arguable basis for denying the claim." *Windmon v. Marshall*, 926 So. 2d 867, 872 (Miss. 2006) (citation omitted). Dey's primary arguments are that State Farm acted in bad faith because it delayed in (1) requesting a medical authorization and (2) informing him that it had questions related to the cause of his injuries. We agree with the district court that the undisputed evidence shows that State Farm had an arguable basis for this delay. Until Dey provided the new medical records, State Farm had no reason to investigate the cause of Dey's injuries.[1] Only in August 2013 did Dey provide State Farm reports from his doctor indicating that surgery was needed. State Farm did initially evaluate Dey's claim on the basis that the accident may have aggravated a pre-existing condition. Without a recommendation for surgery, State Farm estimated that Dey's future medical costs were "nonexistent." That left no reason to investigate a potential pre-existing condition, and no need for a medical authorization to request medical records to aid that investigation. Once it received new records stating surgery was now thought to be necessary, State Farm responded properly to those indications.

As to its denial of policy limits before the receipt of the new medical records, there is no genuine dispute of fact that State Farm had an arguable basis for denial. The medical bills and expenses submitted by Dey totaled only $31,728.54, far less than the $125,000 and $100,000 that Dey demanded.

---

[1] Dey argues in his Reply that State Farm should have known surgery was expected because Dr. Noblin's March 2010 medical report, included in the settlement brochure, stated that Dey "may be moving towards a surgical treatment." But a report dated seven months later from the same physician, also included in the settlement brochure, stated that Dey had reached "maximum medical improvement," and that his condition was not expected to worsen.

No. 14-60300

Furthermore, we agree with the district court that the parties were engaged in a disagreement over the value of the claim, a so-called "pocketbook dispute," which cannot support a claim for bad faith. *See Cossitt v. Alfa Ins. Corp.*, 726 So. 2d 132, 139 (Miss. 1998).

Dey also asserts that State Farm lacked an arguable basis for its denial of payment because it did not seek clarification from his treating physicians as to the additional medical records, did not request Dey be seen by a State Farm doctor, did not respond to Dey's offer to depose his physicians for two months, and did not retain its expert until six days before the litigation deadline. We disagree that these points support bad faith. Bad faith must be more than "mere negligence, inadvertence, clerical errors, or honest mistakes." JEFFREY JACKSON, MISS. INS. LAW AND PRAC. § 13:8 (2014) (footnoting cases). At best, the asserted conduct constitutes negligence or bad judgment. Further, insurers are "not required to disprove all possible allegations made by a claimant. They are simply required to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation." *McKneely*, 862 So. 2d at 535.

Dey has not shown a genuine dispute of material fact that would have justified the denial of summary judgment on the claim of bad faith in refusing to offer payment of the policy limit on his claim.

As a result of our agreement with the district court that State Farm had an arguable basis for the denial of Dey's claim for policy limits, we need not consider whether the conduct was "sufficiently egregious to rise to the level of an independent tort." *See* JACKSON, MISS. INS. LAW § 13:10 (citation omitted).[2]

---

[2] Dey cites *James v. State Farm Mutual Automobile Insurance Co.*, 743 F.3d 65 (5th Cir. 2014). In *James,* there was a 30-month delay between the time the insurer was notified of the accident and the time it tendered any UM benefits. *Id.* at 71. In contrast, State Farm tendered payment of $37,000 under Dey's UM policy eight months after it was notified that Dey had exhausted his administrative remedies, and made offers of settlement in the interim.

## II.     *State Farm's Rule 59(e) motion to amend the judgment*

Where a motion to amend a judgment under Federal Rule of Civil Procedure 59(e) raises an issue of law, we apply *de novo* review.  *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 404 (5th Cir. 2013).  A Rule 59(e) motion "must clearly establish either manifest error of law or fact or must present newly discovered evidence and cannot raise issues that could and should have been made before the judgment issued." *Id.* (citation and quotation marks omitted).

One day after the jury awarded damages of $229,400.50, State Farm filed a motion to amend the judgment under Rule 59(e).  State Farm argued to the district court that Dey's recovery was limited to $100,000 because his basis for recovery was his uninsured motorist policy which had a limit of $100,000.  Dey responded that a Rule 59(e) motion cannot be used to make arguments not raised before trial.   Furthermore, Dey argued, State Farm waived any argument that damages should be limited to the policy limit because (1) such an argument is an affirmative defense and State Farm did not plead it in its answer, and (2) State Farm moved the court to exclude evidence of the policy limit at trial.

The district court granted State Farm's motion.  It held that because its dismissal of State Farm's bad-faith claim was based on a conclusion that State Farm had not "acted in bad faith, [Dey's] recovery at the trial of this matter was necessarily limited to the policy limit."  As to waiver, the district court held that while State Farm was not as diligent as it could have been in raising its argument, its conduct did not rise to the level of waiver as there was no intention to surrender its right to assert that Dey was limited to the policy limit.  In support of this holding, the district court pointed out that the parties stipulated in the pretrial order that any damages sustained by Dey were covered by the policy "pursuant to coverage he purchased for uninsured

motorist coverage." The court further held that State Farm, by seeking to exclude evidence of the policy limit at trial to avoid potentially being prejudiced by evidence that there was $100,000 in insurance coverage, did not waive its legal argument that damages were limited to the policy limit.

We agree with the district court. While it is correct that Rule 59(e) motions may not be used to "raise issues that could and should have been made before the judgment issued," they may be used to correct a "manifest error of law or fact . . . . " *Homoki,* 717 F.3d at 404 (citation omitted). The district court's grant of summary judgment to State Farm on Dey's bad faith claim effectively limited Dey's damage award to the policy limit.

Dey also argues that State Farm waived the right to insist that he could not recover more than his policy limit because it failed to plead the argument in its answer. We have been provided with no legal support for the contention that such an argument must be pled as an affirmative defense. Even if this were an affirmative defense, such a defense may be "raised at a pragmatically sufficient time, and [if the plaintiff] was not prejudiced in its ability to respond," it is not waived. *Bradberry v. Jefferson Cnty.*, 732 F.3d 540, 553 (5th Cir. 2013) (citation and quotation marks omitted). Dey was not subject to "unfair surprise" or prejudice. As the district court noted, the pretrial order, to which both parties stipulated, stated that any damages sustained by Dey would be covered by his uninsured motorist coverage. Dey, therefore, had no basis to claim surprise by State Farm's argument that his damages must be limited to the amount of his uninsured motorist coverage. Furthermore, while State Farm did not specifically state in its affirmative defenses that Dey was limited to policy limits, it did plead that "Plaintiff is not entitled to recover extra contractual damages, punitive or otherwise . . . ."

Similarly unavailing is Dey's contention that State Farm waived its argument that Dey's damages could not be more that the policy limit because

it moved to have evidence of the policy limit excluded at trial.  State Farm sought the exclusion of evidence of the policy limit because it would be prejudicial.  Preventing juror's knowing the amount of available insurance, a silence that might increase the possibility jurors will award less than the limit, is a completely distinguishable position from arguing post-verdict that the judgment cannot be for more than such limit.  We see no waiver.

AFFIRMED.